In re David M. HUTCHINS, Debtor.

Donna Rae HUTCHINS, Plaintiff,

v.

David M. HUTCHINS and P.B. Wagner, Trustee, Defendants.

Bankruptcy No. SB 89–06418 DN.
Adv. No. SB 89–0419 DN.

United States Bankruptcy Court, C.D. California.

April 10, 1990.

Wilfred E. Briesemeister, Crawford, Bangs, Briesemeister & Kent, West Covina, Cal., for plaintiff.

David M. Hutchins, pro se.

## MEMORANDUM OF DECISION

DAVID N. NAUGLE, Bankruptcy Judge.

Donna Hutchins ("Plaintiff") and David Hutchins ("Debtor") were formerly married. The Debtor has received his discharge in bankruptcy; the trustee has filed a no asset report in the Debtor's case. Section 523(a)(5) of 11 U.S.Code excepts from discharge debts owed "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record ... or property settlement agreement, but not to the extent that—(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise ...; or (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support...."

With commendable consideration for the nature of the dispute between the parties and the exigencies of time, the parties have submitted the above-captioned adversary proceeding on the documentary evidence admitted by stipulation at the time of trial. Essentially, the judgment(s) (Superior Court of California, County of San Diego, Case No. DN 42453) dissolving the marriage of the parties and settling their property divisions and support obligations first provide that the Debtor shall pay spousal support and child support in fixed amounts over indefinite periods of time subject to future adjustments. A second item the Debtor is ordered to pay is the attorneys fees of about $20,000 for James A. Hennenhoefer, attorney for the Plaintiff in her dissolution case. The complete nondischargeability of the attorneys fee award was determined in Adversary Proceeding No. SB 89–0423 DN, *Hennenhoefer v. Hutchins*, based on the authority of *In re Spong*, 661 F.2d 6, 9 (2d Cir.1981); *Jones v. Tyson*, 518 F.2d 678 (9th Cir.1975); and *Matter of Gwinn*, 20 B.R. 233, 235 (9th Cir.

BAP 1982). Thus, the Debtor's "fresh start" after bankruptcy will be limited in any event by his continuing obligation to pay the judgment in A.P. No. SB89–0423DN and the periodic payments for spousal, family and child support ordered by the Superior Court.

■ Remaining in dispute is the allocation of various debts between nondischargeable support and dischargeable division of property categories. Federal standards are applied to determine whether any debt arising out of a judgment of dissolution of marriage is a nondischargeable support obligation. See *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir.1984); *Stout v. Prussel*, 691 F.2d 859, 861 (9th Cir.1982). On the other hand, "It is appropriate for bankruptcy courts to avoid incursions into family law matters 'out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters.' [citations omitted]" *In re MacDonald*, 755 F.2d 715, 717 (9th Cir.1985). Where, as here, the state court judgment specifically allocates various debts to the respective categories, considerable deference is due to that determination; periodic payment support coupled with imposition of requirements of payment of individual debts by each spouse leads to the logical inference that the nature and dimension of the support awarded was liquidated and that the debt payments were part of property division.

The appellate courts likewise grant a good deal of deference to the bankruptcy judge in the exercise of his or her discretion in determining the proper characterization of such obligations under the tests established by 11 U.S.C. Section 523(a)(5). See *Shaver v. Shaver, supra,* 736 F.2d, at 1316; *Stout v. Prussel, supra,* 691 F.2d, at 861; *In re Williams,* 703 F.2d 1055, 1057–58 (8th Cir.1983). The Court of Appeals for the Ninth Circuit directs in *Shaver* (736 F.2d, at 1316–17):

> Factors indicating that support is necessary include the presence of minor children and an imbalance in the relative income of the parties. [citation omitted].

Similarly, if an obligation terminates on the death or remarriage of the recipient spouse, a court may be inclined to classify the agreement as one for support. [citations omitted]. A property settlement would not be affected by the personal circumstances of the recipient spouse; thus, a change in those circumstances would not affect a true property settlement, although it would affect the need for support. The court will look also to nature and duration of the obligation to determine whether it is intended as support. Support payments tend to mirror the recipient spouse's need for support. Thus, such payments are generally made directly to the recipient spouse and are paid in installments over a substantial period of time. *Matter of Albin,* 591 F.2d 94, 97 (9 Cir.1979); *In re Smith,* 436 F.Supp. 469 (N.D.Ga.1977).

It is important to note that there was no provision made for support of the recipient spouse in the divorce decree before the court in the *Shaver* case (736 F.2d, at 1317); unlike the case at bar, the *Shaver* court had to determine whether the provisions of the decree at issue therein could be interpreted consistent with any support obligation. Here, the judgment(s) are replete with periodic support payment requirements imposed on the Debtor, but the Plaintiff seeks to augment those nondischargeable debts by reclassifying certain specific debts that the Debtor was ordered to pay.

Thus, the classic confrontation exists here between the overriding public policy favoring the enforcement of familial obligations (embodied in 11 U.S.C. Section 523(a)(5)) and the objectives of federal bankruptcy policy; namely, that debtors, regardless of misfortune or folly, must have fresh starts to be productive members of society. The state court maintains continuing jurisdiction to modify spousal and child support payments so that the earning power and financial wherewithal of the supporting and supported individuals can be reevaluated with changes in circumstances. A rock star or sports celebrity may have an astronomical income at the time of the dissolution of marriage, but the

time dimension of such success can be limited. The domestic relations court maintains flexibility in determining the appropriate levels of support during the time the former spouse is supported and/or the children of the marriage are minors. No such flexibility exists concerning the obligation of the supporting spouse to pay various debts incurred during coverture. Both spouses are liable, and the allocation of the debts to the supporting spouse can vitiate his or her ability to get a fresh start after financial failure culminating in bankruptcy.

Here, the supported spouse (Donna M. Hutchins) faces the unpleasant prospect of remaining liable for debts that will be discharged as to the supporting spouse and Debtor David M. Hutchins. However, she has at least two alternatives: (1) declare bankruptcy herself to discharge the debts; and/or (2) seek a modification of the periodic support obligations for the future so that the state court can rectify any disadvantages she has suffered because of the changes in the allocation of community debts. The latter solution has the favorable aspect of permitting the revised economic positions of the two parties to be reviewed comprehensively. I note that the concrete contracting business of Mr. Hutchins which had appeared quite valuable at the time of the dissolution of marriage ($64,000.00, as determined by Judge pro tem. Salter, after considering the former wife's expert's opinion that the business was worth $120,000.00 and the Debtor's expert's opinion that the correct amount would be $36,823.00—Exhibit 2, pp. 7–8), was found to be valueless by the trustee. The return to state court is not an exercise in circuity since the state court can examine the whole range of financial abilities and potential of the former spouses in fashioning a remedy, whereas the bankruptcy court is limited to an all or nothing determination of dischargeability. Donna Hutchins will remain liable on the community debts regardless of the status of their dischargeability as to the Debtor.

With those principles in mind, I now turn to the specific debts which the Plaintiff seeks to have declared nondischargeable:

1. Specific payments to other than Donna Hutchins designated by the Superior Court, County of San Diego, as "support" in the Temporary Order filed October 3, 1986 (Exhibit 1):

a. First Trust Deed house payment to the Bank of America payable at $468.64 monthly from and after September 1, 1986, until further order.

b. Second Trust Deed house payment to Southwest Bank payable at $798.00 monthly from and after September 1, 1986, until further order.

2. Support payments and modifications set forth in the letter of Judge pro tem. Salter, dated 7 April 1989, paragraph 5 (Arrearages in Support Pendente Lite) (Exhibit 2), and [Addendum to] Judgment (Dissolution), pp. 6–7 (Exhibit 3) [note error of 60 cents in the family support arrearages in the Judgment, p. 6, 1. 19]:

a. Arrearages in child support, totaling $1,500.00.

b. Arrearages in spousal support, totaling $6,481.36.

c. Arrearages in family support, totaling $6,896.28.

3. Other debts and reimbursements from the Judgment (Dissolution), filed September 21, 1989, pages 7 and 16–17:

a. Reimbursement to Donna Hutchins for monies paid to cure the default on the residence to the Bank of America in the sum of $1,171.60.

b. Reimbursement to Donna Hutchins for monies paid to cure the default on the residence to Southwest Bank in the sum of $3,565.60.

c. Debts owed to third parties, as follows:

| | | |
|---|---|---|
| (1) | Westfield Insurance | 420.04 |
| (2) | La Jolla Bank credit line | |
| (3) | Vista Pipe & Supply | 176.10 |
| (4) | Escondido Ready Mix | 4,074.89 |
| (5) | Union Oil (Unocal) | 463.30 |
| (6) | Geib Lumber | 691.51 |
| (7) | Sears | 194.40 |
| (8) | Bank One Compucard | 1,049.62 |
| (9) | Hannah Jarson | 330.00 |
| (10) | Palomar Transit | 853.27 |

(11) Vista Equipment Rental 882.29
(12) Benchmark 514.58
(13) William Hardy 1,350.00
(14) Burgess Trenching 1,120.50
(15) Mobile [sic] Oil 143.21
(16) Pauley's Equipment 1,313.53
(17) Inland Oil 554.76
(18) Safeguard 212.21
(19) Concrete Tie 368.20
(20) North County Ready Mix 1,344.65

d. Expenses for services of the Judge pro tempore (Charles W. Salter, Esq.) 15,000.00

e. Medical expenses for children 700.00

f. Unpaid life insurance-Monarch 4,675.32

g. Division of one-half the values of property that Donna Hutchins now seeks to have determined as debts owed to her for support; to wit:

(1) Hutchins Concrete 32,000.00
(2) ¾ ton GMC Truck 1,037.50
(3) ¾ ton GMC Pick-up 1,400.00
(4) Northwest Life Ins.-CSV 3,909.40
(5) Funco SS2 race car 750.00
(6) Furniture 290.50

Normally, the collectibility of judgments between the former spouses is less certain than it is in the case at bar since Donna Hutchins' attorney (James A. Hennenhoefer, Esq.) is holding certain proceeds of sale of the community residence in his trust account. The remaining balance in the trust account is now $25,416.86, according to the accounting (Exhibit 6). Those funds are not interpled in the bankruptcy court; presumably, the Superior Court, County of San Diego, will enter appropriate orders for the ultimate disbursements of the those funds.

The debts are allocated as dischargeable or nondischargeable as follows:

A. Nondischargeable debts:

1. Unpaid family support payments, including arrearages on the residence set forth above as Items 2abc. The entries at Items 1ab are already included therein to the extent unpaid.

2. Any unpaid periodic family support payments since the entry of the Judgment (Dissolution) on September 21, 1989.

3. Medical reimbursement in the amount of $700.00 (Item 3e, above).

B. Dischargeable debts:

1. Reimbursements to Donna Hutchins for the curing of defaults on the residence to the first and second trust deed holders to avoid foreclosure (Items 3ab, above).

2. Debts to third parties listed in Item 3c, above.

3. Debt to the Judge pro tempore (Charles W. Salter, Esq.) at Item 3d, above.

4. Debt to Monarch Insurance Company for the Debtor's failure to maintain the life insurance he was ordered to place and keep in effect (Item 3f, above).

5. Division of community assets which Donna Hutchins now seeks to reclassify as support debts to her (Item 3g, above).

The allocation of most of the debts set forth in Items A and B, above, is obvious and consistent with the maxims that the fresh start of the Debtor should be liberally granted and exceptions thereto should be narrowly construed. The debt to Judge pro tem. Salter certainly deserves sympathetic evaluation since the debt to Donna Hutchins' attorney is totally excepted from discharge. Still, the logic of treating Judge pro tem. Salter's bill in the same fashion must yield to the language of the statute (11 U.S.C. Section 523(a)(5)) requiring that the debt must be owed to the spouse or former spouse, interpreted in the *Spong* decision, *supra*, as including the spouse's attorney. Judge Salter acted as a neutral arbitrator, not as attorney for Donna Hutchins, to whom the support debt is owed.

When David Hutchins failed to pay the requisite house payments as ordered, foreclosure by both lenders had to be avoided. The expenses incurred therefor by Donna Hutchins were visited on the Debtor by the Superior Court. Reprehensible (or excusable) as his behavior may have been, the additional expenses were not designated as support; and I find it

appropriate to treat them as debts rather than periodic support payments for which examination of the relative economic status of the parties and ability to pay are relevant issues.

The foregoing memorandum contains my findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. Counsel for Donna Hutchins shall prepare and lodge a proposed judgment consistent herewith and which lifts the automatic stays for any collection action against the Debtor and his assets for the debts determined herein to be nondischargeable and for any enforcement and modification actions sought by the parties herein.