In re Walter E. DIMMITT, Debtor.

Ruby K. DIMMITT and Miller
& Sanford, a Professional
Corporation, Plaintiffs,

v.

Walter E. DIMMITT, Defendant.

Bankruptcy No. 90–60856.
Adv. No. 90–6091–S.

United States Bankruptcy Court,
W.D. Missouri.

April 3, 1991.

Craig R. Oliver, Rose E. Barber, Miller & Sanford, Springfield, Mo., for plaintiffs.

Mark E. Gardner, Hall, Ansley, Carmichael & Gardner, Springfield, Mo., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

KAREN M. SEE, Bankruptcy Judge.

This adversary action was tried February 20, 1991. Plaintiffs Ruby Kay Dimmitt and the Miller & Sanford Law Firm appeared in person and by attorneys Craig R. Oliver and Rose E. Barber. Defendant and debtor Walter Dimmitt appeared in person and by attorney Mark E. Gardner.

Plaintiffs Kay Dimmitt and her attorneys, Miller & Sanford, have challenged the dischargeability of certain debts, identified in the Pretrial Statement filed by the parties as follows:

1. Maintenance and support of $1,500 per month beginning March 1, 1990 and continuing until February 1, 1993.

2. Child support of $666.67 per month per child until age 21 and $400 per month per child during the time each child is a full time college student.

3. $210,000 in installment payments to be paid over 10 years with interest of eight percent per annum, identified in the property settlement agreement as maintenance in gross.

4. $5,000 due within 180 days from March 1, 1990.

5. $8,000 for legal services incurred by Kay Dimmitt to Miller & Sanford in the dissolution proceedings.

6. $6,900 to wife for a Plymouth Voyager mini-van in order to secure title for wife at the end of the lease period.

7. All marital debts set forth in Schedule C of the Separation Agreement and paragraph 6 of the Pretrial Statement.

Plaintiffs contend the above obligations are non-dischargeable under 11 U.S.C. § 523(a)(5) because the debts constitute child support and maintenance. Debtor concedes that all child support payments and the periodic maintenance payments of $1,500 per month for three years are non-dischargeable obligations, but contends the remaining debts are either debts which were incurred during the marriage and thus dischargeable as marital debt, or to the extent the debts were assumed by debtor pursuant to the Separation Agreement, are debts assumed by debtor as part of a "property settlement" or "division of property" and thus dischargeable.

Plaintiffs also contend the debts are non-dischargeable under § 523(a)(2)(A) and (B) because the Separation Agreement was obtained through fraud, false representations or false statements in writing. Debtor denies any fraud or misrepresentation and contends that even if false statements were made in connection with execution of the Separation Agreement, any such representations are not the kind which would prevent a discharge under § 523(a)(2)(A) or (B).

The parties were married June 20, 1970. Three children were born of the marriage in 1975, 1977, and 1982. Debtor filed an action for dissolution of marriage in the Circuit Court of Greene County, Missouri on September 26, 1989. A decree of dissolution was entered March 1, 1990. Kay Dimmitt was granted custody of the three minor children.

The Separation Agreement, although not filed with the domestic relations court until March 1, 1990, was negotiated in late January, 1990 on the eve of the scheduled trial.

Paragraph 2 of the Separation Agreement contained a provision for child support of $2,000 per month. Under uniform child support guidelines provided by Missouri law, $2,000 per month is the maximum child support. Paragraph 3 of the Separation Agreement provided for periodic maintenance in the amount of $1,500 per month for three years. The combined monthly total of child support and periodic maintenance currently paid to plaintiff under the Agreement totals $42,000 per year and will continue in that amount for three years, the period in which plaintiff is to receive both child support and periodic maintenance.

Paragraph 18 of the Dissolution Decree values the stock of the dental practice of Walter E. Dimmitt, D.D.S., Inc. at $420,000, and in Paragraph 7 of the Separation Agreement, plaintiff releases her interest in the stock of the dental practice.

Paragraph 8 of the Separation Agreement provides debtor will pay Kay Dimmitt as maintenance in gross $210,000 at eight percent per annum over 10 years, with total payments of $280,000 over 10 years.

The intended purpose of the $210,000.00 payment provided in paragraph 8 of the Separation Agreement was hotly disputed. Plaintiff contends it was intended as support. Debtor contends it represented a payment in lieu of or in satisfaction of property rights in the dental practice, as required by Missouri law, and was therefore in the nature of property settlement.

The Decree and Separation Agreement also provide that debtor will assume all debts of the marriage, totaling in excess of $400,000, and hold plaintiff harmless from those debts.

Shortly after entry of the Decree, plaintiff moved to St. Louis. At the time of the dissolution, Kay Dimmitt had a masters degree in speech pathology, but was not currently employable because she was not

certified as a speech pathologist. She testified it would take her approximately two years to obtain certification at which time she would be employable as a speech pathologist and would qualify for positions in public and private schools, hospitals or private practice.

Debtor Walter E. Dimmitt was, at the time of the dissolution, a dentist specializing in periodontics. Debtor filed bankruptcy in August 1990, shortly before substantial payments were due under the terms of the Separation Agreement, including the payment to Kay Dimmitt of a lump sum of $5,000 due on August 27, 1990, as well as the first of the property settlement payments due under paragraph 8 of the Separation Agreement.

*Maintenance*

Under § 523(a)(2), (5), a debtor may not discharge an obligation for alimony, maintenance or support. Section 523(a)(2), (a)(5)(b) provides that an obligation is dischargeable even if designated as alimony, maintenance or support, unless it is in fact in the nature of maintenance or support.

In determining whether a payment is truly in the nature of alimony, maintenance or support, the Court will look to the actual intention of the parties.

*Location and Amount of Payment*

■ Typically, maintenance and property settlement provisions are treated separately and in different sections of a separation agreement. It is significant that the maintenance in gross provision which plaintiff contends is non-dischargeable is located in the property settlement section of the Agreement and not in that portion of the Agreement which addresses the other issues involving maintenance for plaintiff and child support. It is also significant that the payment provision (paragraph 8) is not only located in the property settlement section of the Agreement, but the payment, which is one-half the value of the stock, immediately follows the provision for release of plaintiff's marital interest in the stock (paragraph 7).

It is also significant that there was a separate and distinct periodic maintenance support provision in the Separation Agreement, paragraph 3. There is no reasonable explanation as to why two separate and distinct maintenance provisions are necessary, and if necessary, why one would be located in a separate section of the Separation Agreement.

The amount of the maintenance in gross payment is also significant. The payment is in the amount of $210,000 plus interest. The parties stipulated in the Decree that the stock in the dental practice had a value of $420,000 (a value which, in the bankruptcy court proceeding, the parties implicitly treated as inflated and incorrect). The maintenance in gross payment is exactly one-half of the value of the stock, a factor which strongly suggests that the payment represents a satisfaction of plaintiff's interest in the stock and is thus in the nature of a property settlement.

The court believes that if the payment in question had been intended as maintenance, it would have been located in the maintenance section, not the property settlement section and would have been in an amount reflecting the actual needs of plaintiff as opposed to exactly one-half of the value of the stock. It is apparent the payment was labeled as "maintenance in gross" in an effort to prevent the dischargeability of a property settlement payment obligation. In *Heilman v. Heilman*, 700 S.W.2d 843, 845 (Mo. banc 1985) the Missouri Supreme Court explained that maintenance in gross provisions are disfavored and should not be used, stating, "trial courts should refrain from characterizing payments in lieu of property as 'maintenance.'"

*Maintenance–Need*

Rehabilitative maintenance is appropriate under Missouri law. However, maintenance is based on need and need must be demonstrated. In this case, there is a specific provision for periodic maintenance in the amount of $1,500 per month for three years. Debtor concedes this provision is in the nature of true maintenance and, therefore, non-dischargeable.

Plaintiff was also to receive two lump sum payments of $5,000, one to be paid

within 90 days and the second to be paid within 180 days after the Decree. Debtor paid the first $5,000 payment. Debtor was also obligated to pay off plaintiff's car lease in the amount of $6,900.

In order to prevail, plaintiff has the burden to establish "need" with respect to the $210,000 payment, the remaining $5,000.00 lump sum payment and the $6,900 car payment. The only evidence was that plaintiff can be certified as a speech pathologist within two years following the dissolution and would then be self-supporting. Sufficient support for plaintiff until such time as she becomes self-supporting has been provided in view of the separate and distinct three year provision for periodic maintenance of $1,500 per month, combined with child support of $2,000 per month; the two lump sum payments of $5,000, which plaintiff needed in order to establish a new household and get started in the months immediately after the dissolution; and the car payment of $6,900.

Plaintiff failed to demonstrate that the $210,000 payment provided in paragraph 8 of the Separation Agreement was based on any actual or projected need of plaintiff Kay Dimmitt. In fact, Kay Dimmitt's testimony established clearly that the payment was not based on any current or projected future need. While plaintiff did testify to the conclusion that the payment was based on the need of plaintiff and her children, there was no evidence to support that contention. On cross-examination, plaintiff acknowledged that she had testified in her deposition, taken only three days before trial, that she did not know what the $210,000 figure was based on and that it was not based on any actual or projected need.

Maintenance is typically greatest in the years immediately following a dissolution. If it varies in amount, it is usually less in later years as the spouse becomes independent. In this case, the escalating payments in later years are inconsistent with the concept of maintenance. The evidence established that plaintiff can be certified in two years and will be employable and self-sufficient at that time. While plaintiff's need for support is greatest in the first three years following the dissolution, the payments escalate to the highest level of $4,000 per month at a time when plaintiff will be self-sufficient. Plaintiff failed to explain the escalation in the payments and failed to demonstrate any increased need to substantiate the escalation.

In the first three years after the dissolution, plaintiff's annual income from child support and maintenance is $42,000. Plaintiff testified that her annual need is $35,592. If the $210,000 payment had been intended as maintenance, then over a 10 year period plaintiff would have, as established at trial, the following annual income in maintenance, child support and earnings:

| Period | Maint. & Child Support | Monthly Earnings | Para. 8 Payments | Total Monthly Income | Monthly Needs | Annual Needs | Annual Income |
|---|---|---|---|---|---|---|---|
| 1st 6 mo | $3,500 | –0– | –0– | $3,500 | $2,966 | $35,592 | $ 42,000 |
| 2d 6 mo [1] | 3,500 | –0– | 1,500 | 5,000 | 2,966 | 35,592 | 60,000 |
| 2d yr [2] | 3,500 | –0– | 2,250[3] | 5,750 | 2,966 | 35,592 | 69,000 |
| 3d yr [4] | 3,500 | 2,000 | 3,500[5] | 9,000 | 2,966 | 35,592 | 108,000 |
| 4th–10th yr [6] | 2,000 | 2,000 | 4,000 | 8,000 | 2,966 | 35,592 | 96,000 |

1. Beginning October 1, 1990 through September, 1991.

2. Beginning March 1, 1991.

3. Average payments equal six months at $1,500 and six months at $3,000.

4. Beginning March 1, 1992.

5. Average payments equal six months at $3,000.

6. Year begins March 1, 1993; periodic maintenance ends.

In year three, plaintiff would receive $108,000 a year in combined child support, maintenance payments, and earnings. There was no evidence of any connection between that level of income and any actual or projected need. The absence of such evidence indicates the $210,000 payment was in satisfaction of property rights in the stock of the dental practice. In years four through ten, plaintiff would receive $96,000 a year, although her testimony indicated a need of approximately $35,600. That evidence indicates income far in excess of actual need, thereby establishing that the payment was not in the nature of support, but rather in the nature of a property settlement.

Plaintiff's attempt to justify the $210,000 payment in general terms, that as the children get older they will become more expensive, their needs will be greater, and they will incur college expenses, was insufficient. This very general testimony does not close the gap between the actual $35,000 need demonstrated through plaintiff's testimony and the income up to $108,000 per year which would be received from the maintenance in gross payments. An additional problem with the general argument about the escalating cost of children growing older and attending college is that paragraph 5 of the Separation Agreement provides for debtor, not plaintiff, to bear the additional expense associated with college, which support obligation is non-dischargeable.

*Need–Education*

Plaintiff's needs must be determined at the time of the dissolution, not according to factors which arose later and were not contemplated in the Settlement Agreement. Plaintiff attempted to justify the maintenance in gross payments on the basis that she had a need for support in the form of $4,000 in tuition per semester at St. Louis University plus $600 in books, for a total exceeding $9,000 a year in educational expenses. Plaintiff elected to incur these expenses by moving to St. Louis and attending a private university, events which were not contemplated at the time of the dissolution, according to her own testimony.

The Court cannot consider circumstances which arose after the dissolution, i.e. that she subsequently decided to move to St. Louis, return to school, and attend a private university with high tuition, in order to determine what her anticipated needs were at the time of the settlement or to justify the need for maintenance beyond the $1,500 per month periodic maintenance and $2,000 per month child support. It is plaintiff's need, or anticipated need at the time of the dissolution, which is relevant to determining the parties' intention at the time the dissolution was entered, not what her need became at a later date.

If maintenance in gross lasted the same period as her attendance at St. Louis University, treatment of the payment as maintenance might be tenable. However, the installment payments are for a period of 10 years, not two years; therefore, the provision could not have been in contemplation of a two year program for certification.

*Standard of Living and Excessive Needs*

Certain of plaintiff's actions appear unreasonable and indicate an unwillingness to consider statutory factors other than the former standard of living. As one example, plaintiff sold all of her expensive, unencumbered furniture and household possessions in Springfield prior to moving to St. Louis, not out of necessity, but because she purchased all new furniture for the St. Louis townhouse. Especially in light of the fact that she would be a student for two years and rely on child support and periodic maintenance to support herself, it would have been more prudent to sell excess furniture which would not fit in her new townhouse and keep furniture which could have been used. Plaintiff cannot create need where reasonable need otherwise would not have existed.

The standard of living the parties enjoyed before the dissolution is one of 10 factors to be considered under Missouri law in arriving at an amount of maintenance.

True, prior to the dissolution, the parties maintained an expensive, even extravagant lifestyle. But the parties were deeply in debt prior to the dissolution, as a result of the high standard of living. There was no equity in any of their assets, including a $350,000 home which the parties sold at a loss and on which a deficiency note was

signed. Through the years, the parties found it necessary to borrow money from family members to pay taxes and to support their standard of living.

It is frequently impossible for parties to maintain the same standard of living they enjoyed before the dissolution. The same income must support two households instead of one. Both parties run the risk that their standard of living will be diminished. Plaintiff cannot argue successfully that the $210,000 payment was intended as maintenance on the basis that she is entitled to enjoy a standard of living subsequent to the dissolution which the parties could not afford prior to the dissolution and which would inevitably lead to the door of the bankruptcy court. This Court believes a domestic relations court would take into consideration the fact that while the parties had enjoyed a high standard of living prior to the dissolution, the standard of living also exceeded what they were able to afford.

*Expert Testimony*

During a pretrial conference, both parties indicated they might call expert witnesses to testify as to the normal range of maintenance and support in Greene County, Missouri, under circumstances similar to those which existed at the time of the dissolution. Defendant produced two domestic relations attorneys to testify as experts and both testified that the amount of periodic maintenance and child support (exclusive of the $210,000 payment) were within the range of what one could expect a Circuit Court in Greene County, Missouri to award under the facts and circumstances of the case.

The experts also testified as to matters which went beyond the scope anticipated by the court, including testimony as to legal issues and legal conclusions. To that extent, the Court did not consider such testimony in arriving at its findings of fact or conclusions of law.

*Maintenance–Failure to Divide Major Asset*

The parties stipulated and agreed in the Dissolution Decree that the value of the stock in the dental practice was $420,000. The stock, according to the valuation placed on the stock by the parties, was the major asset of the parties. As a result, under Missouri law, the parties and the court had a duty to divide that marital asset in a fair and equitable manner. While plaintiff testified that she did not consider the $210,000 payment, which was exactly one-half of the value of the stock, as a payment in lieu of property settlement, plaintiff must have expected that she would receive some compensation for the release of her interest in the stock pursuant to paragraph 7 of the Separation Agreement.

The fact that the $210,000 obligation is in the paragraph immediately following the release of her marital interest in the stock, and the fact that it is exactly one-half the value of the stock, suggest the payment was for her interest in the stock. To find otherwise would require this Court to conclude that the parties and the Court failed to provide for a division of the largest asset of the marriage, as required by Missouri law.

*Valuation of Stock*

On cross-examination, debtor's counsel attempted to establish that plaintiff, contrary to her testimony on direct examination, was concerned about the value of the stock in the dental practice in order to obtain as much as she could for the release of her marital interest in the stock. Plaintiff denied any concern with the value of the dental practice, presumably because her alleged interest was not in property settlement, but only in maintenance and support.

Although plaintiff contended in the bankruptcy court trial that she had no interest in the value of her husband's stock, she employed an expert witness on the eve of the dissolution of marriage trial to establish a value for the practice, and shortly after the expert's deposition, the parties agreed to a valuation of the stock at $420,-

000. While plaintiff testified she had no concern with regard to the value of the stock, her actions in hiring an expert to place a value on the stock to obtain a higher settlement for the release of her interest in the stock indicate otherwise. It is also clear that the $210,000 payment was in satisfaction of her marital interest in the stock. In this regard it is notable that the agreement on the value of the stock and the $210,000 payment was made only after the other terms for child support and maintenance had been agreed to.

*Misconduct*

Plaintiff contended the bankruptcy court must give extra weight to alleged marital misconduct, which is one factor out of 10 in the Missouri maintenance statute. The domestic relations court could have considered allegations of misconduct by both parties in arriving at the amount of maintenance to be paid. Plaintiff did present some evidence of misconduct by debtor, and debtor initially announced he would counter with evidence of plaintiff's misconduct, but after the court indicated the misconduct factor would not overshadow the other nine statutory factors, debtor elected to forego the evidence of plaintiff's alleged misconduct. Thus, the record may appear one-sided in that regard.

In addition to the $2,000 per month child support, plaintiff will receive maintenance of $1,500 per month, totaling $54,000 in maintenance over three years. These payments are consistent with her needs over that period and with the statutory factors which the state court would have considered in awarding maintenance. Plaintiff's needs would not have justified the award of an additional $210,000 as maintenance, even assuming marital misconduct by debtor. The $210,000 maintenance in gross payment would be approximately four times the amount of periodic maintenance awarded and it is not credible to believe that a domestic relations court would, in an effort to punish one spouse, require that spouse to pay as a penalty for marital misconduct, an amount of maintenance which was four times the amount required for the support of the innocent spouse. It is also noted that the issue of misconduct was not determined by a state court judge because the parties entered into a settlement agreement.

*Divisibility of Maintenance in Gross*

In order to treat the entire $210,000 as maintenance, a "need" for maintenance in that amount must be shown. Plaintiff's evidence does not support such a finding. As a result, this court must consider whether a portion of the $210,000 could be maintenance.

Plaintiff suggested at the conclusion of the case that while the payment might appear to be in satisfaction of plaintiff's marital interest in the stock of the dental practice and thus in the nature of a property settlement, it was the major asset of the marriage and thus served some support function. It is true that all assets of a marriage serve some support function, but if that overly broad reasoning were adopted, all property settlements would be non-dischargeable as serving "some support function."

The evidence did not demonstrate an intent by either party to treat any sum less than the full $210,000 as maintenance. If there had been such evidence, then an argument could be made that a portion of the $210,000 was intended as maintenance and a portion was intended as property settlement.

It has been suggested that it is improper for a bankruptcy court to attempt to divide a payment provision in such a way as to classify part as property settlement and part as maintenance. *In re Hutchins*, 113 B.R. 1 (Bankr.C.D.Cal.1990). If the court were to attempt such a division, sufficient guidelines would have to be present in order to make some allocation based on the evidence. *In re Hudgens*, 57 B.R. 184 (Bankr.M.D.La.1986). Such guidelines are not present in this case. Any attempt by the court to apportion the payment into maintenance and property settlement would be based on mere speculation and

would, in fact, be contrary to the evidence of need discussed earlier. It is clear from the evidence that the payment in question was intended as a property settlement of the marital rights in the stock of the dental practice and only a minor portion, if any, could have been intended as maintenance. In view of these facts, the Court must find the entire $210,000 payment represents a payment in lieu of or in satisfaction of property rights.

### Maintenance–Benefits and Detriments

In every dissolution where one spouse assumes all of the debts of the marriage and agrees to make substantial payments to the other spouse in satisfaction of his or her interest in marital property, there is a risk that the obligor spouse will be incapable of performing his obligations and may resort to bankruptcy.

Here, plaintiff bargained for additional benefits resulting from treating installment payments of the $210,000 as a property settlement in the Separation Agreement. The obligation was to bear interest at the rate of eight percent, was not modifiable, did not terminate upon death or remarriage, was not treated as taxable income to plaintiff, and was not tax deductible to debtor. Plaintiff cannot have the benefits of having the payment treated as property settlement in the domestic relations case without the attendant risk that it will be dischargeable in a bankruptcy case.

### Maintenance–Assumption of Debt

Debtor assumed marital debts in excess of $400,000 which plaintiff seeks to have declared nondischargeable. Plaintiff contends that the substantial marital debt incurred by the parties was attributable in great part to imprudent investments by debtor. The largest ill-fated investment was in Kingdom Mining, a coal mining venture with a close family friend, Donnie Rogers. According to plaintiff, the losses

resulting from Kingdom Mining, while having some impact on their lives, did not affect their standard of living, but did affect their discretionary income. There is an inherent inconsistency in Mrs. Dimmitt's testimony in that a loss or reduction in discretionary income necessarily affects one's standard of living. The assumption of the Kingdom Mining debt was the assumption of a business debt and was not in the nature of maintenance or support.

Plaintiff argues that debtor's assumption of the remaining marital debts served a support function. An assumption of marital debt standing alone does not demonstrate an intent that the assumption of debt serve primarily a support function. While the assumption of debt on an asset which is necessary for the support of family, such as an automobile, might under certain circumstances be intended to serve a support function, a general assumption of debts not attributable to any specific asset used for support does not constitute maintenance or support. The assumption of the debts in question here does not serve a maintenance or support function.

### Fresh Start

If this Court were to find that the $210,000 payment did not represent a satisfaction of plaintiff's interest in the stock of the dental practice, the result of this bankruptcy would be that debtor would be worse off following bankruptcy than before the bankruptcy. Before bankruptcy, debtor was obligated to pay plaintiff $210,000 for her interest in the stock in his dental practice, but was to keep the stock which the parties valued at $420,000.[7] Thus, debtor would have a $420,000 asset from which to pay plaintiff. Following bankruptcy, debtor's interest in that stock became an asset of the estate to be liquidated for the benefit of the creditors of the estate. Thus, following bankruptcy, debtor would lose the asset from which he was to pay plaintiff but would still have the obli-

---

7. It is noted that during the bankruptcy court trial, the parties operated on the implicit assumption that the $420,000 value used during the dissolution was excessive and was used as the value of the stock because plaintiff demanded $210,000 as her share of the asset, and in

gation. Such a result would defeat the goal of providing debtor with a fresh start.

Furthermore, the parties suffered extreme financial problems during the marriage, and today plaintiff is in the same position she would be in had the parties filed a joint bankruptcy prior to the dissolution. She would have received no compensation for the value of the stock then, because the asset would have been part of the bankruptcy estate, and similarly, today she will receive no non-dischargeable compensation for the division of that asset.

*Fraud*

■ Plaintiff contends the Separation Agreement was procured by fraud and thus is non-dischargeable under § 523(a)(2)(A) and (B). The court finds there was not sufficient evidence to demonstrate that the Separation Agreement or the Decree were procured by fraud.

Debtor filed bankruptcy in the eighth month following the agreement between Debtor and plaintiff. As noted above, the actual agreement was reached in January, although it was not formally reduced to writing and filed with the court until March 1, 1990.

Plaintiff contends Debtor fraudulently induced her to enter into the Separation Agreement and that he knew at the time he executed the Agreement that he had no intention of performing its terms and in fact, intended to file bankruptcy and discharge the obligations assumed in the Agreement. Plaintiff's only evidence on this issue is the timing of the bankruptcy after the dissolution proceedings. Plaintiff's evidence on this issue created nothing more than a possible inference and is not sufficient to support a finding that such a fraudulent intent existed. While the fact that the bankruptcy was filed within eight months of the Agreement might be considered some evidence of such a fraudulent intent, standing alone it is insufficient to

support an judgment of non-dischargeability under § 523(a)(2)(A).

Debtor provided a satisfactory explanation as to his attempts to comply with the terms and provisions of the Decree. The evidence shows that debtor performed and in good faith attempted to perform many of the obligations of the Decree up until the time of the filing of bankruptcy, and further establishes that there was a substantial downturn in his dental practice which resulted in debtor being obligated to make payments in excess of his income.

There was evidence from which the court could conclude that Debtor had an affair prior to the dissolution with the office administrator of his dental practice. Debtor married the office administrator in December 1990, approximately four months after the filing of his bankruptcy and eleven months after the settlement reached between Debtor and plaintiff Kay Dimmitt. While Debtor may have concealed his intentions with respect to the affair and subsequent remarriage, the concealment does not go to the substance of the Separation Agreement and thus cannot serve as a basis for a denial of discharge based on fraud.

*Attorney Fees*

■ The court concludes that the $8,000 in attorney fees which were awarded to plaintiff in the underlying dissolution action, and which were to be paid directly to the law firm of Miller & Sanford pursuant to paragraph 17 of the Separation Agreement, are in the nature of maintenance because Kay Dimmitt was incapable of paying her own attorney fees during the dissolution action.

## CONCLUSION

Plaintiff has the burden of establishing the facts to avoid a discharge of the obligations enumerated in paragraphs 1 through 7 on page 1 of these findings and conclusions. Plaintiff did not meet that burden on the provisions for assumption of all marital debts and for payment of $210,-

order for the division of the asset to be equal, the parties used the arbitrary value of $420,000.

That value was, in fact, in excess of plaintiff's expert's valuation.

000 at eight percent interest over 10 years. Accordingly, it is hereby

ORDERED, ADJUDGED AND DECREED as follows:

1. The following obligations are in the nature of maintenance or support and are non-dischargeable: maintenance in the amount of $1,500 per month beginning on March 1, 1990 and continuing until February 1, 1993; child support of $2,000 per month ($666.67 per month per child) until age 21 and $400 per month per child during the time each child is a full time college student; the $5,000 lump sum payment due within 90 days after entry of the Decree of Dissolution on March 1, 1990 and the $5,000 payment due within 180 days after entry of the Decree; $8,000 in legal fees incurred by Kay Dimmitt to the law firm of Miller & Sanford in the dissolution proceedings; and the payment of $6,900, which was intended to pay the balance due on a vehicle lease for plaintiff's Plymouth Voyager. Plaintiff is entitled to interest on all sums due at the statutory rate of interest provided by Missouri law.

2. The following obligations in the Separation Agreement were not in the nature of support or maintenance, but were part of the division of marital property and debts and are dischargeable in this bankruptcy proceeding: Debtor's assumption of marital debts, as set forth in Schedule C of the Agreement; and the $210,000 payment identified as maintenance in gross in paragraph 8.

3. Debtor did not engage in fraud in the procurement of the Separation Agreement or in the assumption of debts pursuant to the Agreement, and Debtor will not be denied discharge of said debts and obligations pursuant to 11 U.S.C. § 523(a)(2)(A) or (B).