In re Nicholas E. **PURPURA**, Debtor.

**Bankruptcy No. 193–15927–353.**

United States Bankruptcy Court, E.D. New York.

Aug. 10, 1994.

---

Monasch & Strauss by Jeffrey T. Strauss, New York City, for Barbara Maida.

James O. Guy, Garden City, for debtor.

## DECISION DISMISSING
## CHAPTER 11 CASE

JEROME FELLER, Bankruptcy Judge.

The protagonists in this matter are not strangers to legal fray. Nicholas E. Purpura ("Purpura" or "Debtor") and Barbara Maida ("Maida"), the Debtor's former spouse, slugged it out for eight (8) years in a divorce action at various levels of the New York State court system. After exhausting his appellate remedies and still unable to make peace with the equitable distribution awards made in the divorce action, Purpura commenced this Chapter 11 case. Once again, Maida was frustrated in her efforts to realize the cash, stock and real estate sale proceeds awarded to her approximately three years prior to the inception of the Chapter 11 case.

Before the Court is a multi-tiered motion of Maida seeking duplicative and redundant relief in her seemingly interminable efforts to collect her due from a former spouse who refuses to pay. Stripped of its surplusage, Maida seeks, essentially, to lift the automatic stay or, in the alternative, requests a dismissal of Purpura's Chapter 11 case on the ground that it was not filed in good faith.

This Chapter 11 case is a classic two party conflict properly resolved in the non-bankruptcy forum. It was strategically initiated in a futile attempt to forestall Maida's collection efforts. Purpura's cognizable debts are not significant, and his assets are more than sufficient to pay such debts. Moreover, the assets awarded Maida under a pre-petition divorce decree are her sole and separate property and do not constitute property of the Debtor's estate. Nor does an obligation to turnover these assets to Maida represent "debts" of Purpura dischargeable in bankruptcy.

The Chapter 11 reorganization process is properly employed to restructure debts, not to rewrite history. However, the only reorganization purpose of this Chapter 11 case is the Debtor's desire to "reorganize" the pre-petition equitable distribution awards granted his former wife by a state court. This cannot be done. In sum, since no legitimate purpose is served by this Chapter 11 case,

cause exists to dismiss under 11 U.S.C. § 1112(b).

## I. *THE MATRIMONIAL ACTION*

Purpura and Maida were married in July 1967. The marriage produced two children, a daughter born in 1970 and a son born in 1973. Subsequent to the birth of the second child, the marriage began to unravel, and, ultimately, the couple, in October 1983, separated. On or about July 2, 1985, Maida commenced an action for divorce and ancillary relief in the Supreme Court of the State of New York, Richmond County, entitled *Purpura v. Purpura*, Index No. 5769/85 (hereinafter "Matrimonial Action"). By order, dated March 25, 1988, signed by the Honorable Norman J. Felig, New York State Supreme Court Justice, the Matrimonial Action was referred to a judicial hearing officer. Justice Felig's order stated that the referral to a judicial hearing officer was "upon the consent of the parties and their respective attorneys." Accordingly, the Matrimonial Action was tried and decided by a judicial hearing officer, the Honorable Lester Sacks (hereinafter "J.H.O. Sacks").

The parties and their witnesses in the Matrimonial Action were heard in early September 1988 on the issue of divorce, and the state court issued a decision later that month granting absolute divorce in favor of defendant Purpura on his counterclaim. The issues of equitable distribution of the marital assets were thereafter the subject of a hotly contested, bitterly fought and protracted 10 day trial, commencing on September 7, 1988 and ending on September 12, 1989.[1] By memorandum decision, dated March 14, 1990, the state court resolved the issues of equitable distribution ("Memorandum Decision"). Among other things, J.H.O. Sacks allocated property accumulated while Purpura was associated with Bear Stearns and Company ("Bear Stearns") between the former spouses—35% to Maida and 65% to Purpura. In that connection, paragraph "Third" at pages 5–6 of the legal conclusions portion of the Memorandum Decision provided, in pertinent part, as follows:

It has been agreed that certain bonus monies received by [Purpura] from Bear Stearns in the sum of $166,756 is the separate property of [Purpura]. All other assets, bonus, dividends, income and stock of whatever nature received by [Purpura] from Bear Stearns due to his position as trader and/or general partner shall be shared by the parties, 35% to [Maida] and 65% to [Purpura].

In or about 1971, Purpura and Maida purchased a home at 5 Longfellow Avenue, Staten Island, New York, which became the marital home of the parties and their children during the marriage. In or about June 1983, Purpura purchased a house at 50 West Entry Road, Staten Island, New York, and he took up residence at this location when the couple separated. The Memorandum Decision also required that these two houses were to be sold and the net proceeds shared equally by Purpura and Maida.

J.H.O. Sacks signed a judgment on September 13, 1990, entered the following day, which judgment granted the divorce and implemented the equitable distribution rulings contained in the Memorandum Decision. Thus, the judgment included decretal paragraphs requiring, among other things, that Purpura pay and deliver to Maida her share of the Bear Stearns assets, and directing the sale of the two Staten Island houses and the equal distribution of the net sales proceeds therefrom (hereinafter "Divorce Judgment").

On January 31, 1991, J.H.O. Sacks issued an order supplementing and amending the Divorce Judgment ("January 1991 Order"). Among other things, the January 1991 Order quantified the 35% share of Bears Stearns assets awarded to Maida into finite dollar amounts and into a finite quantity of Bear Stearns stock. The January 1991 Order specifically directed Purpura to, i) pay the aggregate sum of $571,556.66 to Maida (the "Money Judgement") and ii) transfer 31,733 shares of his common stock in Bear Stearns to Maida (the "Stock Award"). The January 1991 Order also provided that payment of the Money Judgment and delivery of the Stock Award were to be made within 45 days from the date of entry of the order.

---

**1.** Post-trial evidentiary hearings continued into December 1990.

Purpura moved in the state court to stay enforcement of the Divorce Judgment, as supplemented and amended by the January 1991 Order, pending an appeal. In that connection, Purpura delivered in March 1991, a certified check in the amount of $571,556.66 to the Clerk of the Court, Richmond County ("Escrow Funds"), and sent a letter to Bear Stearns directing that it transfer 31,733 shares of Bear Stearns stock from his account into a separate escrow account ("Escrow Stock").[2] By order entered in April 1991, J.H.O. Sacks held that the Escrow Funds and the Escrow Stock "adequately secure [Maida] should she prevail on appeal." Accordingly, J.H.O. Sacks determined that the establishment and maintenance of these escrow deposits satisfied the requirements of state law for a stay of enforcement, pending appeal. Pursuant to a stipulation "So ordered" by J.H.O. Sacks, enforcement of the Divorce Judgment in respect of the direction to sell the two Staten Island houses and to divide the net proceeds therefrom was also stayed pending appeal.

Purpura moved in the state court to reduce the amount of Escrow Funds deposited with the New York City Department of Finance to secure, pending appeal, the Money Judgment awarded Maida. By order dated August 13, 1991, J.H.O. Sacks granted a credit in favor of Purpura and in reduction of the Money Judgment in the (corrected) amount of $140,292. By agreement of the parties, certain sums were withdrawn by Purpura from the Escrow Funds, leaving Purpura with a net credit or reduction of the Money Judgment totalling approximately $120,000.

Purpura's efforts to overturn the rulings of J.H.O. Sacks were unsuccessful. By its decision and order, dated May 24, 1993, the Appellate Division of the Supreme Court of the State of New York, Second Department,

affirmed both the Divorce Judgment and January 1991 Order. On or about May 28, 1993, Purpura moved for leave to appeal the Appellate Division's decision and order to the Court of Appeals of the State of New York. By order dated July 9, 1993, Purpura's motion for leave to appeal was denied by the state's highest court.

## II. *THE CHAPTER 11 FILING*

On July 14, 1993, Purpura filed a petition for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York. The timing was not fortuitous. Only five days earlier, the Court of Appeals of the State of New York had denied his motion for leave to appeal the equitable distributions granted by the trial court and affirmed by the Appellate Division.

Purpura's schedules list assets in excess of $3 million. Included in the Debtor's scheduled assets are the Escrow Funds, Escrow Stock and Maida's property interest in the two Staten Island houses that were ordered to be sold, with the net proceeds thereof divided equally between Purpura and Maida. These two houses, both of which are unencumbered by mortgages and other liens, are reflected by Purpura on Schedule A as having a current aggregate market value of $1,875,000.[3]

Deeming his former wife's entitlements under the pre-petition equitable distribution awards as debt, Purpura lists Maida in Schedule F as a creditor holding a disputed, unsecured nonpriority claim in the sum of $2,165,234. Apart from Maida, the Debtor's schedules reflect modest debt relative to his assets. Purpura's schedules identify five creditors holding general unsecured claims totalling $50,524.[4] In addition, the Debtor's schedules list unsecured priority tax claims

---

2. The Richmond County Clerk subsequently transferred the Escrow Funds to the New York City Department of Finance where they are being held in Account No. R117546, and Bear Stearns deposited the Escrow Stock into Account No. 044-87655.

3. The house located at 50 West Entry Road, Staten Island, New York is valued at $1,300,000, and the house at 5 Longfellow Avenue, Staten Island, New York is valued at $575,000.

4. Included among these five creditors are the following, i) Purpura's deceased father—a $20,000 claim; ii) an accounting firm against whom Purpura asserts a malpractice cause of action—a $23,550 claim; and iii) New York State Department of Taxation and Finance—a disputed $5,288 claim.

totalling $25,680. Excluding Maida, but including a claim of his deceased father and claims subject to potential offset or dispute, Purpura schedules claims aggregating approximately $76,000.

## III. DISCUSSION

■ Chapter 11 of the Bankruptcy Code is a powerful tool (i.e., automatic stay, marshalling and turnover of assets and discharge of debts) which can be initiated with virtual impunity. Any person who meets the minimal eligibility requirements contained in 11 U.S.C. § 109(d) may file a Chapter 11 petition.[5] These minimal eligibility requirements render Chapter 11 amenable to abuse. The good faith standard for the filing and maintenance of Chapter 11 cases protects the jurisdictional integrity of the bankruptcy courts and prohibits a debtor's misuse of its processes. It is well established that a lack of good faith constitutes cause for dismissal of a Chapter 11 case under 11 U.S.C. § 1112(b). *First Nat'l Bank of Sioux City v. Kerr (In re Kerr),* 908 F.2d 400, 404 (8th Cir.1990); *Carolin Corp. v. Miller (In re Carolin Corp.),* 886 F.2d 693, 698–99 (4th Cir.1989); *Phoenix Piccadilly, Ltd. v. Life Ins. Co. of Virginia (In re Phoenix Piccadilly, Ltd.),* 849 F.2d 1393, 1394 (11th Cir.1988); *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.),* 779 F.2d 1068, 1072 (5th Cir.1986); *In re Winshall Settlor's Trust,* 758 F.2d 1136, 1137 (6th Cir.1985). As this Court has observed:

> The good faith requirement provides parties in interest and the bankruptcy courts with an important and useful policing tool for preserving the reorganization process for those Chapter 11 cases for which it was actually intended. Its proper application makes certain that debtors who seek bankruptcy reorganization protection do so for no purpose other than to accomplish the legitimate aims and objectives of the statute.

*In re HBA East, Inc.,* 87 B.R. 248, 258 (Bankr.E.D.N.Y.1988).

**5.** Under 11 U.S.C. § 109(d), stockbrokers, commodity brokers and railroads are precluded from filing Chapter 11 cases; otherwise, any person who may be a debtor under Chapter 7 of the Bankruptcy Code can file a Chapter 11 case.

## A. LITIGATION TACTIC IN TWO PARTY DISPUTE

■ The facts here reek of Chapter 11 misuse, if not more. In September 1990, after more than five (5) years of litigation in the Matrimonial Action, including a ten (10) day trial, a Divorce Judgment was entered in which Maida was awarded 35% of the Bear Stearns assets and 50% of the net proceeds from the sale of two Staten Island houses. In January 1991, and after further litigation, Maida's portion of the Bear Stearns assets was quantified by separate state court order, i.e., a Money Judgment—$571,556.66 in cash; and a Stock Award—31,733 shares of Bear Stearns stock. Purpura sought and obtained state court stays delaying, pending appeal, enforcement of the Divorce Judgment. In order to obtain a stay of enforcement, the sum of $571,556.66 and 31,733 shares of Bear Stearns stock were deposited, pending appeal, in separate escrow accounts. More than two years of appellate litigation ensued, resulting in an affirmance of the trial court's equitable distribution awards. Nonetheless, the Escrow Funds, Escrow Stock and 50% interest in the two Staten Island houses were not received by Maida. Instead, less than one (1) week after exhaustion of his state court appellate remedies, Purpura initiated the instant Chapter 11 case on July 14, 1993. After eight (8) years of litigation, including trial, judgment, stays and appeals, Maida was again stymied.

Purpura commenced his Chapter 11 case to avoid the consequences of adverse state court equitable distribution of marital asset decisions, while he continues to attack those determinations. The filing was strategic in objective and calibrated in timing to block his ex-spouse's realization of her equitable distribution awards. Convinced to a certainty that he received a "bad deal" in the Matrimonial Action, Purpura filed this Chapter 11 case to provide himself with another chance at litigating equitable distribution, during which time he would bask in the protection of the automatic stay. In fact, this is precisely what Purpura has done. Subsequent to his

Chapter 11 filing, Purpura launched a two front attack in his continuing attempts to eliminate the pre-petition equitable distribution awards. First, he moved before the state court in the Matrimonial Action to have the Divorce Judgment vacated for jurisdictional reasons.[6] Second, Purpura commenced an adversary proceeding in this Court requesting a turnover under 11 U.S.C. § 543 of the Escrow Funds awarded Maida in the Matrimonial Action and being held in escrow by the New York City Department of Finance.[7]

This Chapter 11 case reduces itself to a two party dispute between Purpura and Maida. Purpura's incantations sound in bankruptcy, but fundamentally he continues to dispute the fate of valuable property awarded Maida in the Matrimonial Action. Absent the pre-petition equitable distribution awards, Purpura would have never filed a Chapter 11 petition. He filed not to reorganize, but rather, as indicated, as a litigation tactic to relitigate and at the same time to further thwart Maida's collection efforts.

Moreover, Purpura's financial posture negates any legitimate reorganization purpose. According to his bankruptcy schedules, he is solvent and, apart from Maida, reports insubstantial debt in relation to his assets held by a handful of creditors. Purpura presented no evidence that those creditors were pressing for payment when he filed. He does not need Chapter 11 protection to conduct his business affairs and pay his creditors. Purpura is fully capable of paying every penny of his not more than $76,000 of non-Maida scheduled debt without resort to a Chapter 11 reorganization. Purpura's assets include entitlement to approximately $120,000 from the Escrow Fund being held by the New York City Department of Finance, and a 50% interest in two unencumbered houses having a combined value of approximately $1.5 million. Plainly, Purpura is employing Chapter 11 as an offensive weapon in this two party fracas, contrary to the principle that our

"bankruptcy laws are intended as a shield, not as a sword." *In re Penn Central Trans. Co.*, 458 F.Supp. 1346, 1356 (E.D.Pa.1978).

■ Where, as here, a debtor's Chapter 11 effort involves essentially a two party dispute based on state law, and the filing for relief represented a litigation tactic to stall and impede the enforcement of legal rights against the debtor, dismissal for "cause", i.e., a bad faith filing, is warranted. *In re Moog*, 159 B.R. 357 (Bankr.S.D.Fla.1993) (facts similar to this case—Chapter 11 case filed by debtor as a litigation tactic to circumvent ex-spouse's efforts to enforce New York divorce decree was dismissed as bad faith filing); *In re HBA East, Inc.*, 87 B.R. 248 (Bankr. E.D.N.Y.1988); *In re Schlangen*, 91 B.R. 834 (Bankr.N.D.Ill.1988); *In re Van Owen Car Wash, Inc.*, 82 B.R. 671 (Bankr.C.D.Cal. 1988); *In re Noco, Inc.*, 76 B.R. 839, 844 (Bankr.N.D.Fla.1987); *In re Cardi Ventures, Inc.*, 59 B.R. 18 (Bankr.S.D.N.Y.1985); *In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849 (Bankr.S.D.N.Y.1984). Furthermore, bankruptcy rehabilitation provisions are intended to benefit only those in genuine financial distress and are not to be used strategically as an avoidance mechanism to get out of particular obligations viewed by a debtor as having undesirable consequences. *Barclays–American/Business Credit, Inc. v. Radio WBHP, Inc. (In re Dixie Broadcasting Inc.)*, 871 F.2d 1023, 1026–28 (11th Cir.), *cert. denied*, 493 U.S. 853, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989) (Chapter 11 case); *Shell Oil Co. v. Waldron (In re Waldron)*, 785 F.2d 936 (11th Cir.), *cert. dismissed*, 478 U.S. 1028, 106 S.Ct. 3343, 92 L.Ed.2d 763 (1986) (Chapter 13 case).

## B. PROPERTY OF ESTATE AND DISCHARGEABILITY OF DEBTS

Purpura's dominant objective in commencing the instant Chapter 11 case was to wipe out the pre-petition equitable distribution awards obtained by Maida in the Matrimo-

---

6. This motion to vacate was filed in December 1993 and was denied by the Honorable Louis J. Marrero, New York State Supreme Court Justice, in May 1994. Purpura has appealed.

7. *Purpura v. Commissioner of the Department of Finance of the City of New York*, Adv.Proc. No. 194–1140. This lawsuit was commenced in April 1994 and has been held in abeyance pending this Court's decision on Maida's motion to, among other things, dismiss Purpura's Chapter 11 case.

nial Action and toward that end, as shown above, improperly employed his bankruptcy filing as a strategic ploy. Utilization of Chapter 11 for such an impermissible purpose is not the only trick in Purpura's arsenal of Chapter 11 abuse. If unsuccessful in his chief objective, he intends to erode Maida's pre-petition entitlements through a plan of reorganization. Purpura would propose a reorganization plan providing for reduced, if not de minimis, payment to Maida, and then seek to discharge the remainder of her entitlements by way of confirmation of the plan. *See* 11 U.S.C. § 1141(d).[8]

■■■ The Bankruptcy Code defines property of an estate in bankruptcy to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). While the scope of this definition is broad, it is not a bottomless pit. Property of the estate is limited to, among other things, property interests in existence at the time the bankruptcy petition was filed. The rights of a debtor in property are not expanded or enlarged upon the filing of a bankruptcy petition. *Old Stone Bank v. Tycon I Building Ltd. Partnership*, 946 F.2d 271, 276 (4th Cir.1991) ("It is well established that a debtor ... cannot use the cover of bankruptcy to acquire greater property rights than it was entitled to prior to bankruptcy."); *Brown v. Dellinger (In re Brown)*, 734 F.2d 119, 124 (2nd Cir. 1984) ("It is true of course that upon the filing of a petition in bankruptcy, the bankruptcy estate can have no greater interest in property included in it than the debtor had when the petition was filed."); *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir.), *cert. denied*, 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984) ("[W]hatever rights a debtor has in property at the commencement of the case continue in bankruptcy—no more, no less."); H.R.Rep. No. 595, 95th Cong., 1st Sess. 367 (1977) U.S.Code Cong. & Admin.News 1978, pp. 5787, 6323 (11 U.S.C. § 541 "... is not intended to expand the debtor's rights against others more than they existed at the commence-

ment of the case."). Whether or not a debtor has an interest in property sufficient to bring it within the ambit of "property of the estate" is determined by state law or other applicable nonbankruptcy law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098, 1101 (2d Cir.1990); *Sanyo Electric, Inc. v. Howard's Appliance Corp. (In re Howard's Appliance Corp.)*, 874 F.2d 88, 93 (2d Cir. 1989).

Purpura's Chapter 11 petition schedules the property awarded by the state court to Maida as her equitable distribution of the marital assets and lists her as an unsecured creditor, albeit one whose claim is disputed. Driven by a desire to circumvent and avoid the Divorce Judgment, as supplemented and amended by the January 1991 Order, he considers the property awarded Maida under the pre-petition divorce decree to be property of the estate and that Maida's rights thereto represent debt owing by him, which debt can be discharged under a Chapter 11 reorganization plan. He is wrong on both counts; i.e., the property awarded Maida under the pre-petition divorce decree is her property and not the property of the estate, and Purpura owes no "debt" to Maida dischargeable in bankruptcy.

■ It is widely recognized that property awarded to a non-debtor spouse pursuant to a divorce decree finalized prior to the debtor spouse's bankruptcy is not part of the debtor's estate. *See, e.g., Wilson v. Wilson (In re Wilson)*, 158 B.R. 709 (Bankr.S.D.Ohio 1993) (portion of debtor's retirement fund awarded pre-petition to non-debtor spouse under state court divorce decree is not property of the estate); *Adamo v. Ledvinka (In re Ledvinka)*, 144 B.R. 188 (Bankr.M.D.Ga.1992) (non-debtor spouse's entitlement to portion of debtor's retirement funds under pre-petition marital settlement agreement is her sole and separate property); *In re Greenwald*, 134 B.R. 729 (Bankr.S.D.N.Y.1991) (rights in various items of property, including cash, grant-

---

8. 11 U.S.C. § 1141(d)(1)(A) provides, in pertinent part, that, except as provided in the plan of reorganization, "confirmation of a plan—discharges the debtor from any debt that arose before the date of such confirmation."

ed under pre-petition equitable distribution award upon divorce, vested in non-debtor spouse prior to filing under New York Law, and thus such property was not property of the debtor's estate); *Boyer v. Boyer (In re Boyer)*, 104 B.R. 497 (Bankr.S.D.Fla.1989) (funds awarded non-debtor spouse under prior divorce decree are not property of the estate of the debtor spouse). The applicable legal precept has been articulated by a respected treatise as follows:

> It is generally recognized that once the divorce decree becomes final, the property interests awarded are vested pursuant to the decree. As long as the property awarded existed at the time of the decree, even if it was cash, a prebankruptcy court order divesting the debtor spouse of an interest in the property will normally keep that property out of the debtor spouse's bankruptcy estate.

Henry J. Sommer et al., *Collier Family Law And The Bankruptcy Code* § 2.01[5] at 2–11 (1994 ed.)

Long before Purpura's Chapter 11 filing, the state court in the Matrimonial Action, construing New York law and after extensive litigation, entered a divorce decree awarding equitable distribution of the marital assets.[9] The appeals process, affirming the trial court's determinations, were concluded prior to the bankruptcy filing. The pre-petition finality of all these events divested Purpura of all legal and equitable interest in the property awarded Maida under the Divorce Judgment, as amended and supplemented by the January 1991 Order.[10] Those property interests vested in Maida pre-petition and constituted her sole and separate property. Purpura could not, by improperly withholding property belonging to Maida, make them property of the estate under 11 U.S.C. § 541(a)(1).

The Divorce Judgment, as supplemented and amended by the January 1991 Order, by its terms, awarded Maida 35% of the Bear Stearns assets, quantified that 35% interest into specific sums of cash and stock and further granted Maida a specific 50% interest in the two Staten Island houses. The Divorce Judgment, awarding Purpura 65% of the Bear Stearns assets and 50% of the net proceeds from the two Staten Island houses, further divested him of any interest in the property awarded his former wife. Accordingly, when the Chapter 11 case was filed on July 14, 1993, Purpura owned nothing more than 65% of the Bear Stearns assets and 50% of the two houses.

Because Purpura, at the time of his Chapter 11 filing, had no interest in the property awarded Maida, his obligation to deliver such property to her was not a "debt" or obligation to pay that could be discharged in bankruptcy. A "debt" is defined by the Bankruptcy Code as "liability on a claim" and requires that there be a "right to payment" from the debtor. *See* 11 U.S.C. § 101(12) and § 101(5)(A). This Debtor, however, has no obligation pay Maida from his own property, but was merely to act, in effect, as an agent for the transfer of property to its rightful owner, i.e., his former wife. Thus, while the Divorce Judgment may well have effected a division of property, it did not create a debt or obligation dischargeable in bankruptcy. Succinctly stated, the Divorce Judgment created property interests and not debt.

## C. THE DIVORCE JUDGMENT, AS SUPPLEMENTED AND AMENDED BY THE JANUARY 1991 ORDER, IS RES JUDICATA

██ Under the res judicata doctrine, a final judgment on the merits of an action

---

**9.** New York State Law requires that in a marital action, the court "shall determine the respective rights of the parties in their separate or marital property, and shall provide for the disposition thereof in the final judgment." N.Y. Domestic Relations Law § 236, Part B, subd. 5, par. a. (Mckinney 1988).

**10.** The Debtor cites *In re Palmer*, 78 B.R. 402 (Bankr.E.D.N.Y.1987) as authority for the proposition that the property awarded his ex-spouse is property of the estate. The *Palmer* case is entirely inapposite. Unlike this case, in *Palmer*, the equitable distribution awards were not obtained prior to bankruptcy. Under those circumstances, Judge Holland held that where a non-debtor spouse's equitable distribution rights vest *after* commencement of the bankruptcy case, the non-debtor spouse's rights are subject to the Bankruptcy Code's scheme of distribution as any other creditor.

precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Cromwell v. County of Sac,* 94 U.S. (4 Otto) 351, 352, 24 L.Ed. 195 (1877). A federal court must give a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered. *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415–16, 66 L.Ed.2d 308 (1980) (citing 28 U.S.C. § 1738); *Kelleran v. Andrijevic,* 825 F.2d 692, 694 (2d Cir.1987), *cert. denied,* 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988). In New York, a final judgment in a marital action rendered by a court of competent jurisdiction determines the rights of the parties. *In re Greenwald,* 134 B.R. at 731. As the Court of Appeals for the State of New York stated:

> In general, a final judgment of divorce issued by a court having both subject matter and personal jurisdiction has the effect of determining the rights of the parties with respect to every material issue that was actually litigated or might have been litigated.

*Rainbow v. Swisher,* 72 N.Y.2d 106, 110, 531 N.Y.S.2d 775, 777, 527 N.E.2d 258, 260 (1988). The Divorce Judgment, as supplemented and amended by the 1991 Order, is a final judgment enforceable in the New York state courts. Accordingly, the equitable distribution of marital assets granted by that final judgment, affirmed on appeal, is res judicata as to the property rights of Maida and Purpura in this Court.

Purpura asserts that the entire Divorce Judgment is void, arguing that the judicial hearing officer who tried and decided the Matrimonial Action, J.H.O. Sacks, lacked subject matter jurisdiction because of an alleged invalid reference under state law. The trial of the Matrimonial Action started in 1988, and the appeals process concluded in 1993. Over this five year period, a claim that the judicial hearing officer lacked subject matter jurisdiction was never once raised. It is a claim that was never made by way of an objection at the time of trial; it is a claim that was never raised in any of the notices of appeal or pre-argument statements filed by Purpura; it is a claim that was never made in any of the four appellate briefs submitted to the Appellate Division, Second Department, by Purpura; and it is a claim that was not made in the motion filed with the Court of Appeals in support of Purpura's request for leave to appeal to that Court. As indicated above, the state court has already denied a post-petition motion by Purpura to vacate the Divorce Judgment for jurisdictional reasons. Not surprisingly, Purpura has appealed that ruling. Having filed his Chapter 11 petition in bad faith, Purpura is surely not entitled to bankruptcy protection pending determination of this latest appeal.

Purpura further asserts that the Divorce Judgment is void because it was allegedly procured by fraud. He charges misrepresentations and falsifications, including perjury, by Maida and/or her attorney, particularly that Maida understated her assets and misrepresented the absence of assets. These claims of fraud were presented and rejected at every level of the New York state court system (trial court, appellate division and court of appeals) in the Matrimonial Action.[11]

---

**11.** The Matrimonial Action is not the only place that Purpura has lodged fraud claims against Maida and/or her attorney. In or about February 1987, a lawsuit was instituted by Purpura in the United States District Court for the Eastern District of New York against the law firm with which Maida's attorney was formerly associated. *Purpura v. Buskin, Gaims, Gaines, Jonas and Stream, Esqs.,* cv–87–0453(RJD). The complaint in this action included several charges of fraud, perjury and suborning of perjury. This lawsuit was voluntarily discontinued soon after it was commenced. In 1992, Purpura filed a lengthy complaint against Maida's attorney with the Disciplinary Committee of the Supreme Court, Appellate Division, First Judicial Department. In this disciplinary complaint, Purpura charges Maida's attorney with having perpetrated fraud both upon him and the Courts of the State of New York. In March 1993, after considering the response of Maida's attorney, the Disciplinary Committee closed the file, and it has remained closed. Finally, in October 1993, Purpura filed a RICO action against Maida and her attorney in the United States District Court for the Eastern District of New York, charging fraud and racketeering in connection with the Matrimonial Action and seeking damages of more than $6 million. *Purpura v. Maida et al.,* cv–93–4696(RJD).

Accordingly, the principle of res judicata precludes revival of this litigation in the bankruptcy court to collaterally attack the Divorce Judgment as a fraudulent judgment. *See Heiser v. Woodruff,* 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1946), *reh'g denied,* 328 U.S. 879, 66 S.Ct. 1335, 90 L.Ed. 1647 (1946). As the Supreme Court in *Heiser v. Woodruff* has taught:

> It is true that a bankruptcy court is a also a court of equity ... and may exercise equity powers in bankruptcy proceedings to set aside fraudulent claims, including a fraudulent judgment where the issue of fraud has not been previously adjudicated.... But we are aware of no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of res judicata, which is founded upon the generally recognized public policy that there must be some end to litigation and that when one appears in court to present his case, is fully heard, and the contested issue is decided against him, he may not later renew the litigation in another court.

327 U.S. at 732–33, 66 S.Ct. at 856. [Citations Omitted].

Courts obviously retain inherent power to ascertain whether their judgments were obtained by fraud. *See Universal Oil Products Co. v. Root Refining Co.,* 328 U.S. 575, 580, 66 S.Ct. 1176, 1779, 90 L.Ed. 1447 (1946), *reh'g denied,* 329 U.S. 823, 67 S.Ct. 24, 91 L.Ed. 700 (1946); *Alberta Gas Chems., Ltd. v. Celanese Corp.,* 650 F.2d 9, 12–13 (2d Cir.1981); *In re Holden, et al.,* 271 N.Y. 212, 218, 2 N.E.2d 631 (1936). If Purpura believes that the Divorce Judgment can be set aside as having been obtained by fraud, he is free to seek such relief from the state court and request stays from that court. He is not at liberty to either relitigate the Divorce Judgment or to obtain stays of its enforcement in the bankruptcy court.

## IV. *CONCLUSION*

A Chapter 11 petition must be filed with the honest intent and genuine desire to utilize the provisions of Chapter 11 for its intended purpose. Chapter 11 was not intend-

ed to insulate a disappointed spouse from the effect of a pre-petition divorce decree. This case is essentially a two party dispute animated by an effort to continue a pre-petition, state court adjudicated equitable distribution of marital assets controversy and have that adjudication changed to the satisfaction of a disgruntled former spouse. To permit the use of Chapter 11 for such purpose would condone abuse of the bankruptcy process.

For all of the above reasons, this Chapter 11 case serves no legitimate reorganization purpose, and it is accordingly dismissed "for cause" under 11 U.S.C. § 1112(b).

**AN ORDER CONSISTENT WITH THIS DECISION IS BEING ENTERED SIMULTANEOUSLY HEREWITH.**

*This action is pending, apparently in its early stages.*