**In re James Harris GALPIN, Debtor.**

**Mary Louise GALPIN,
Plaintiff/Appellee,**

v.

**James Harris GALPIN,
Defendant/Appellant.**

**Civ. No. C85–87G.**

United States District Court,
N.D. Georgia,
Gainesville Division.

Sept. 18, 1985.

G. Allen Braxton, Gainesville, Ga., for plaintiff/appellee Mary Louise Galpin.

Edmund A. Waller, Gainesville, Ga., for defendant/appellant James Harris Galpin.

Harmon T. Smith, Gainesville, Ga., for himself, as Trustee.

## ORDER

O'KELLEY, District Judge.

Presently pending before the court is an appeal by the defendant, James Harris Galpin, of the bankruptcy court's decision granting the plaintiff's motion for summary judgment. This adversary proceeding was initiated by the plaintiff, Mary Louise Galpin, the defendant's ex-wife, to deter-

mine the dischargeability of debts allegedly owed plaintiff pursuant to a September 30, 1982, property settlement agreement ("divorce agreement"). The defendant is the debtor in the underlying Chapter 7 bankruptcy proceeding filed November 2, 1983. Both parties moved for summary judgment pursuant to a pretrial order in which the parties agreed that the only issues to be resolved were issues of law and not of fact. The court finds that the decision of the bankruptcy court, in light of the evidence submitted, is not clearly erroneous and, therefore, affirms the bankruptcy court's decision granting the plaintiff's motion for summary judgment. The court affirms in part and remands in part the bankruptcy court's award of attorney's fees and costs.

### Facts

The plaintiff and the defendant were divorced by the Circuit Court for Sumner County, Gallatin, Tennessee ("Circuit Court") on September 30, 1982. Incorporated within the Circuit Court's final order was a divorce agreement providing in pertinent part:

3. Mary Galpin shall live in the residence of the parties until it can be sold provided that James Galpin maintains the payment (principal, interest, insurance and taxes) and one-half of all other major upkeep relative to the house.

5. James Galpin shall pay Three Hundred ($300) dollars per month child support for both children until the house is sold. After the house is sold, James Galpin will pay Three Hundred ($300) dollars per child per month for a total of Six Hundred ($600) dollars a month child support. When each child reaches eighteen (18) years of age, the child support will be reduced to One Hundred Fifty ($150) dollars upon each child reaching eighteen years of age, however, he will continue to pay that amount as long as the child is in college.

On September 23, 1983, the Circuit Court entered a judgment against the defendant for $3,121.61 in monies owed the plaintiff but not paid by the defendant under the divorce agreement. The Circuit Court also awarded the plaintiff $850.00 in attorney's fees and $39.40 in costs. Included in the $3,121.61 was $2,145.00 representing payments on the house that the defendant had not paid.

Plaintiff submitted to the bankruptcy court an affidavit indicating that as of April 1, 1984, she has made seven unreimbursed mortgage payments totaling $5,001.08. Plaintiff's affidavit further states that as of April 1, 1984, an additional $2,952.85 in accrued interest charges and $370.15 in late charges were owed by the defendant on the house. The accrued interest allegedly increases by $590.57 per month beginning April 30, 1984. The house was apparently sold sometime in May of 1984.

Plaintiff also submitted two affidavits from her attorneys, Allen Broxton and Bill Hodde. Mr. Broxton's affidavit states that he worked 39 hours on this bankruptcy proceeding and that he charges $60.00 per hour for a total fee of $2,340.00. Mr. Broxton also indicated that he had incurred $94.50 in costs. Mr. Hodde's affidavit states that attorney's fees and costs were awarded the plaintiff in the amount of $889.40 for Mr. Hodde's work in obtaining the September 23, 1983, Circuit Court judgment against the defendant. Mr. Hodde's affidavit further states that since August 5, 1983, the date of the hearing resulting in the Circuit Court judgment against the defendant, he has expended 36 hours at an agreed upon rate of $75.00 per hour for an additional fee of $2,700.00. Mr. Hodde did not indicate what activities the 36 hours related to. Mr. Hodde states he has incurred $52.71 in costs since August 5, 1983.

On January 16, 1985, the bankruptcy court granted plaintiff's motion for summary judgment and awarded her $8,914.65. In addition, the bankruptcy court awarded $2,434.50 in attorney's fees and cost for the use of Allen Broxton and $2,752.70 in attorney's fees and costs for the use of Bill Hodde. On April 17, 1985, the bankruptcy court denied the defendant's motions for a new hearing and for technical corrections

and amended the January 16, 1985, judgment to include the $889.40 in attorney's fees and costs awarded the plaintiff by the Circuit Court for the use of Bill Hodde.

### Discussion

Section 523, Title 11 United States Code, governs the dischargeability of debts arising out of a divorce, stating in pertinent part:

> (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, as support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of the court of record or property settlement agreement. . . .

The appropriate standard for reviewing the findings of the bankruptcy court is whether or not the finding was "clearly erroneous." *In re Garfinkle*, 672 F.2d 1340, 1344 (11th Cir.1982); *In re Bedingfield*, 42 B.R. 641, 644 (S.D.Ga.1983).

■ In light of the evidence submitted, the court finds the bankruptcy court's determination that the defendant was obligated to make the payments on the house mortgage was not clearly erroneous. The defendant did not submit any evidence, or indicate that any such evidence exists, to support his contention that the parties did not intend to obligate him, under the divorce agreement, to make the house payments. The only logical reading of paragraph 3 of the divorce agreement is that the defendant agreed to make the house payments up until the sale of the house.

While not necessarily binding on the court, the Circuit Court's judgment against the defendant, finding him to be obligated under the divorce agreement, is further evidence that the intent of the parties, including that of the court which approved the divorce agreement, was to obligate the defendant.

■ The defendant did not provide any evidence, or indicate that any such evidence existed, to show that the agreement to make the house payments was in the nature of a property settlement and not in the nature of alimony, support or maintenance. Nor has defendant contested this issue in his pleadings, arguing instead that the obligation did not exist. A reading of the terms of the divorce agreement, providing for a doubling of the child support payments effective immediately after the sale of the house, clearly indicates that it was the intent of the parties that the house payments were in the nature of support or maintenance. The bankruptcy court's finding that the defendant's obligation to make house payments is non-dischargeable under 11 U.S.C. § 523(a)(5) is not clearly erroneous.[1] While the defendant has contested the formula used by the bankruptcy court for determining the damage done the plaintiff by the defendant's refusal to make the required house payments, the defendant has not submitted any evidence that counters plaintiff's affidavit outlining her damages. Therefore, the court finds the bankruptcy court's determination of the amount due the plaintiff, $8,914.65, not to be clearly erroneous.

---

1. Defendant argues that this debt is dischargeable because the house payments were not to be paid directly to the plaintiff. This argument, in light of the bankruptcy court's valid determination that the payments were intended to be in the nature of support or maintenance, is without merit. *In re Bedingfield*, 42 B.R. at 645 ("debts payable to third parties can be viewed as maintenance or support obligations under this statute; the crucial issue is the function the award was intended to serve"); *In re Edwards*, 33 B.R. 942, 945 (Bkrtcy.N.D.Ga.1983) ("legislative history indicates that § 523(a)(5) was not intended to render dischargeable all support-related liabilities which involve payment by the debtor to third parties").

Likewise, defendant's urging that the bankruptcy court hold a hearing for the purpose of an in-depth investigation into the financial background of the plaintiff and the defendant is without merit. *In re Harrell*, 754 F.2d 902, 907 (11th Cir.1985). The structure of the divorce agreement makes it clear that the parties intended the house payments to be in the nature of support or maintenance, no future finding is necessary.

■ The bankruptcy court's determination that the defendant must make child support payments past the children's reaching the age of 18, as detailed in paragraph 5 of the divorce agreement, is correct. The Eleventh Circuit has recently held:

> We are persuaded by the language of § 523(a)(5), the legislative history of that section, and the weight of the case law that the absence of a state law duty does not determine that an obligation is dischargeable in bankruptcy. Accordingly, we affirm the ... court's decision with respect to the non-dischargeability of debtor's obligation to pay post-majority child support and educational expenses.

*In re Harrell,* 754 F.2d 902, 905 (11th Cir.1985). Thus, defendant's argument that under Tennessee law when the children reach the age of 18 the defendant's general state law duty to support them ends, thus rendering that part of paragraph 5 providing for support after the age of 18 void, is clearly without merit.

■ The defendant has also alleged that the plaintiff improperly redeemed and used a $10,000 certificate of deposit established by the defendant as a trust fund for the education of his children. The court agrees with the bankruptcy court that the defendant has failed to provide any evidence that the plaintiff *improperly* used the $10,000 and, therefore, finds the bankruptcy court's rejection of the defendant's counterclaim for $10,000 not to be clearly erroneous.

■ The defendant does not contest the attorney's fees and costs awarded the plaintiff's attorney of record in the adversary proceeding, Allen Broxton, except to argue that an evidentiary hearing should have been held to determine the reasonableness of the requested fees and to consider the financial status of the parties. The bankruptcy court had before it, in affidavit form, a complete list of Mr. Broxton's hours spent on the case, the work performed during that time, and Mr. Broxton's

rate. As the defendant did not object to the hours or the rate, or supply any evidence pertaining to the financial status of either of the parties, a hearing was unnecessary. It is within the bankruptcy court's discretion to award attorney's fees for an attorney who establishes the nondischargeability of a debt under § 523. *In re Teter,* 14 B.R. 434, 437 (Bkrtcy.N.D.Texas 1981). The bankruptcy court's award for Mr. Broxton's work is not clearly erroneous.

■ Nor does the defendant make any direct objection to the award of $887.40 in attorney's fees and costs for the use of Bill Hodde, reflecting the amount awarded in the September 23, 1983, judgment by the Circuit Court. The award of the Circuit Court was clearly not in the nature of a property settlement, as the marital property had already been divided among the parties. Rather, the award was in the nature of alimony, support or maintenance because the fees and costs were incurred in order to enforce provisions of the divorce agreement which, as the bankruptcy court properly determined them to be, were in the nature of alimony, support or maintenance. *In re Lewis,* 39 B.R. 842, 846 (Bkrtcy.W.D.N.Y.1984); *In re Romeo,* 16 B.R. 531, 537 (Bkrtcy.D.N.J.1981) ("Legal fees and costs expended by defendant spouse for enforcement of the nondischarged/nondischargeable debts are similarly held to be nondischargeable.") The court, therefore finds the award of $889.40 in attorney's fees and costs for Mr. Hodde, representing the amount awarded in the Circuit Court judgment not to be clearly erroneous.

■ The court is not, however, comfortable with the bankruptcy court's award of $2,752.70 for Mr. Hodde's work after August 5, 1983.[2] Fees the plaintiff incurred from Mr. Hodde's work on this adversary bankruptcy proceeding may permissibly be reimbursed. Nothing in the case law indi-

**2.** Defendant has alleged in his pleadings that he did not receive a copy of Mr. Hodde's affidavit in support of attorney's fees. Defendant has not, however, submitted any evidence to counter plaintiff's affidavits to the effect that the affidavit was timely mailed to the defendant.

cates that only the work of the attorney of record may be reimbursed. Therefore, the bankruptcy court may, in its discretion, award reasonable attorney's fees and costs for any work of Mr. Hodde that relates to the determination of nondischargeability. The bankruptcy court should not, however, award attorney's fees for work on proceedings in state court that have not been awarded by the relevant state court. The $889.40 awarded by Circuit Court is the only award by that court for Mr. Hodde's work in that court to enforce the divorce decree. If Mr. Hodde incurred additional expenses relating to the Circuit Court judgment he should have filed a supplemental motion and affidavit for attorney's fees and costs to that court. Mr. Hodde's affidavit does not explain what amount of his 37 claimed hours were associated with the bankruptcy proceeding, stating only that the hours resulted from his efforts "to enforce support or contempt Orders against the Debtor." Therefore, the issue of attorney's fees and costs to be awarded Mr. Hodde for work after August 5, 1983, is remanded to the bankruptcy court for a determination of the number of hours Mr. Hodde expended working specifically on this nondischargeability proceeding and for the award of reasonable attorney's fees for that work and that work alone.

### Conclusion

Accordingly, the bankruptcy court's decision granting the plaintiff's motion for summary judgment and awarding $8,914.65 in damages is affirmed. The bankruptcy court's award of $2,434.50 in attorney's fees and costs for the use of Mr. Broxton and of $889.40 in attorney's fees and costs for the use of Mr. Hodde is also affirmed. The award of attorney's fees and costs of $2,752.71 incurred by Mr. Hodde after August 5, 1983, is remanded for a determination and award of reasonable attorney's fees and costs for work relating to plaintiff's adversary proceeding in the bankruptcy court.