In re Nathan I. PRAGER, aka Nathan Isaac Prager, dba Nathan I. Prager C.P.A. & Associates, P.C., Debtor.

Dora BINDER, Plaintiff,

v.

Nathan I. PRAGER, the above-named chapter 7 debtor, Defendant.

Bankruptcy No. 94–27661–K.
Adv. No. 94–1099.

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

May 9, 1995.

Ben G. Sissman, Memphis, TN, for debtor.

William A. Cohn, Cordova, TN, for plaintiff-creditor.

Jimmy L. Croom, Staff Atty., U.S. Trustee's Office, Memphis, TN, for U.S. Trustee for Region 8.

### MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ARISING OUT OF COMPLAINT TO DETERMINE DISCHARGEABILITY OF PARTICULAR SUPPORT DEBTS COMBINED WITH NOTICE OF THE ENTRY THEREOF

DAVID S. KENNEDY, Chief Judge.

The instant matters before the court are cross-motions for summary judgment pursuant to FED.R.BANKR.P. 7056 filed by the plaintiff, Dora Binder, and the defendant, Nathan I. Prager, the above-named debtor ("Debtor"), in the pending above-captioned adversary proceeding wherein the plaintiff seeks a nondischargeable judgment against the debtor under 11 U.S.C. § 523(a)(5)(B) and FED.R.BANKR.P. 4007 arising out of certain future post-majority educational support claims.

By virtue of 28 U.S.C. § 157(b)(2)(I) this is a core proceeding; and the court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(a).

The ultimate and sole issue for judicial determination is whether certain future educational support obligations which extend beyond the age of majority should be considered to be in the nature of alimony, maintenance, or *support* such that they are excepted from the debtor's general discharge pursuant to 11 U.S.C. § 523(a)(5).

Based on all of the pleadings, memoranda, statements of counsel, the parties' joint factual stipulation, and consideration of the case record as a whole, the court grants the plain-

tiff's motion for summary judgment. The following constitutes the court's findings of fact and conclusions of law in accordance with FED.R.BANKR.P. 7052.

The relevant background facts are not in dispute and may be briefly summarized as follows. The marriage between the plaintiff and the debtor was dissolved on November 11, 1982 by order of the Shelby County, Tennessee Circuit Court in Case No. 86895–8 R.D. The final decree of divorce incorporated the parties' "Property Settlement Agreement" and provides in pertinent part here at paragraph 8 as follows:

> "8. *CHILD SUPPORT*: Husband [debtor herein] shall pay unto Wife [plaintiff herein] the sum of Three Hundred and Seventy–Five dollars ($375.00) per month, per child or a total of Seven Hundred and Fifty dollars ($750.00) per month, as child support for the Parties' minor children, until said child or children, attains the age of eighteen (18) years, or until said child or children marries. *Should any child remain a full time student past the age of 18 said support shall continue as long as such child remains a full time student, but in no case will support continue past the time said child attains the age of twenty two (22).* Said child support payments shall be tendered to Wife on or before the 10th day of each month following the month in which this Agreement is executed."

Factual Stipulation, Exhibit 2 at 4–5 (emphasis added).

The gravamen of this adversary proceeding centers around the above emphasized language.

On August 8, 1994, the debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code listing the plaintiff as an unsecured creditor holding a claim of $27,000.

On October 28, 1994, the plaintiff filed the underlying above-captioned adversary proceeding seeking to except the future post-majority educational support claims from discharge in accordance with 11 U.S.C. § 523(a)(5)(B) [1] and FED.R.BANKR.P. 4007.

Plaintiff primarily contends that the obligations created by the final decree of divorce are nondischargeable support obligations for all future educational expenses beyond the high school level in accordance with paragraph 8 of the parties' court approved property settlement agreement. Debtor, in contrast, takes the position that the future educational payments in question are not for child support and instead contends that they are not actually in the nature of alimony, maintenance, or support because they require payments to be made after the children reach the age of majority—that is to say, the point beyond which he is statutorily obligated to provide support for his children under applicable state law. Debtor bases his position on the fact that under Tennessee State law such payments are contractual in nature as there is no statutory duty to support a child beyond the age of majority.

■ Sixth Circuit precedents concerning section 523(a)(5) issues have previously been provided in *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir.1983) and *Fitzgerald v. Fitzgerald (In re Fitzgerald)*, 9 F.3d 517 (6th Cir.1993). The *Calhoun* opinion adopted a four-step analysis and held that the bankruptcy court in step one of the analysis is to determine whether the parties to the divorce or the state court intended to create an obligation to provide support. The second step in the *Calhoun* inquiry is to determine the effect of the support obligation—that is, the bankruptcy court must determine if the obligation is necessary to presently insure that the daily needs of the

---

1. Specifically, 11 U.S.C. § 523(a)(5) provides as follows:

> (a) a discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>
>     *    *    *    *    *    *
>
> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, di-

vorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit or property settlement agreement, but not to the extent that—

>     *    *    *    *    *    *
>
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony maintenance or support.

former spouse and any children of the marriage are satisfied. The court next considers under the *Calhoun* analysis the third and fourth steps of practical effect and reasonableness respectively.

■ In *Fitzgerald,* the Sixth Circuit revisited its holding in *Calhoun* and in essence admonished that the *Calhoun* analysis is only to be applied in instances where the nature of an obligation under a divorce decree or marital dissolution agreement is unclear; however, where an obligation is labeled as alimony, maintenance, or support and the parties intended to create a support obligation, the bankruptcy court's inquiry should end. *Fitzgerald,* 9 F.3d at 521. Under the particular circumstances, the *Fitzgerald* opinion is the controlling precedent in this proceeding. *Fitzgerald* governs situations, such as this, where the parties intended to create a support obligation and where the obligation is denominated as alimony, maintenance, or support as opposed to that presented in *Calhoun* "where it was necessary to determine whether something *not* denominated as support in the divorce decree was really support" under a "hold harmless" or property settlement agreement. *Id.* (emphasis in original).

■ There is little question that under Tennessee State law, standing alone, there is no statutory duty to support a child after the age of majority and any duty to provide post-majority support is purely contractual in nature. *See Penland v. Penland,* 521 S.W.2d 222, 224–25 (Tenn.1975) (holding that a provision in divorce decree requiring the husband to provide for "all future educational expenses beyond the high school level" is contractual in nature and not part of the legal duty to support minor children); *Blackburn v. Blackburn,* 526 S.W.2d 463 (Tenn.1975); *Stevens v. Raymond,* 773 S.W.2d 935 (Tenn. App.1989); and *Hawkins v. Hawkins,* 797 S.W.2d 897 (Tenn.App.1990); *see also* TENN. CODE ANN. §§ 1–3–113 (MICHIE 1994) and 34–11–102 (MICHIE 1991 & Supp.1994) (providing definition of "majority").

■ Federal bankruptcy courts, however, are not bound by the labels that the parties to the divorce or state courts place on

obligations. *See Williams v. Williams, (In re Williams),* 703 F.2d 1055, 1057 (8th Cir. 1983); *In re Calhoun, supra.* The dischargeability of purported alimony, maintenance, or support obligations under 11 U.S.C. § 523(a)(5) is to be determined by federal bankruptcy law and not state law. H.R.Rep. No. 595, 95th Cong., 1st Sess. 364 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 79 (1988). The weight of published circuit, district, and bankruptcy court opinions addressing the instant issue have held that obligations to provide post-majority support, whether in the form of child support payments or educational support, are nondischargeable support obligations as contemplated in 11 U.S.C. § 523(a)(5). *See, e.g., Harrell v. Sharp (In re Harrell),* 754 F.2d 902, 905 (11th Cir.1985) (holding "the nature of debtor's promise to pay educational expenses and child support is not determined by the legal age of majority under state law."); *Boyle v. Donovan (In re Boyle),* 724 F.2d 681, 683 (8th Cir.1984); *Guerron v. Grijalva (In re Grijalva),* 72 B.R. 334 (S.D.W.Va.1987); *Galpin v. Galpin (In re Galpin),* 66 B.R. 127 (N.D.Ga.1985); *Beck v. Beck (In re Beck),* (No. 92–22414–B, 94–0460) 1994 WL 687446 (Bankr.W.D.Tenn. Dec. 6, 1994); *Ozey v. Ozey (In re Ozey),* 166 B.R. 169 (Bankr.N.D.Okl.1994); *Warren v. Warren (In re Warren),* 160 B.R. 395 (Bankr.D.Me.1993); and *Bush v. Bush (In re Bush),* 154 B.R. 69 (Bankr.S.D.Ohio 1993).

In each of these opinions, the courts focused on federal bankruptcy law rather than the underlying state law in analyzing whether such post-majority educational support obligations were actually in the nature of alimony, maintenance, or support. In each instance the respective courts found such obligations to be nondischargeable.

■ The Sixth Circuit *Fitzgerald* opinion does not look to whether such an obligation is contractual in nature or even whether such obligation is one imposed by state law. The *Fitzgerald* inquiry rather focuses on the intent of the parties and whether that intent was to create a support obligation and whether such obligation is actually in the nature of alimony, maintenance, or support. In this proceeding there is no question but

that the parties to the divorce intended to create such a support obligation. As noted earlier, the "Property Settlement Agreement" entered into by the parties and incorporated into the Final Decree of Divorce states as follows:

> "8. *CHILD SUPPORT*: Husband shall pay unto Wife the sum of Three Hundred and Seventy-five dollars ($375.00) per month, per child or a total of Seven Hundred and Fifty dollars ($750.00) per month, **as child support** for the Parties' minor children, or until said child or children, attains the age of eighteen (18) years, or until said child or children marries. Should any child remain a full time student past the age of 18 **said support** shall continue as long as such child is a full time student but in no case will **support** continue past the time the child attains the age of twenty two (22). Said **child support payments** shall be tendered to the Wife on or before the 10th day of each month following the month in which this Agreement is executed."

Factual Stipulations, Exhibit 2 at 4–5 (emphases added).

It is clear from this language that the plaintiff and the debtor intended to create a support obligation. Consistent with the holding in *Fitzgerald,* irrespective of whether state law characterizes the obligation as purely contractual, it is nonetheless an obligation in the nature of child support which satisfies the statutory requirements under federal bankruptcy law for being excepted from the debtor's general discharge in accordance with 11 U.S.C. § 523(a)(5).

■ Debtor has cited an unpublished Sixth Circuit order which the he asserts holds that debts for post-majority child support are dischargeable. *Sholes v. Sholes (In re Sholes),* 985 F.2d 561 (Table) 1993 WL 15123 (6th Cir. Jan. 25, 1993). As an initial matter this court notes that Rule 24(c) of the RULES OF THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT (West 1994)[2] disfavors citation of unpublished opinions in the circuit and district courts. Although Rule 24(c) does provide that counsel may cite to unpublished opinions in certain circumstances, which requirements the debtor's counsel has complied with, it does not address the binding effect of such an opinion. The majority of Sixth Circuit and district court authority holds that such opinions are not binding precedent. *See, e.g., United States v. Williams,* 15 F.3d 1356, 1362 n. 6 (6th Cir.1994) (en banc) ("In as much as this circuit's opinion . . . is unpublished, . . . it is not precedent."); *Silverberg v. Evitts,* 993 F.2d 124, 127 (6th Cir.1993) ("Finally, as an unpublished decision, *Taylor* [*v. Montgomery,* 915 F.2d 1573 (Table) 1990 WL 151117 (6th Cir. Oct. 9, 1990) ] is not binding precedent."); *City of Detroit v. City of Highland Park,* 878 F.Supp. 87, 90 n. 3 (E.D.Mich. 1995); and *Bunker v. Jabe,* 787 F.Supp. 718, 722 (E.D.Mich.1992) ( "[A]s an 'unpublished opinion,' it is not controlling precedent which this Court must follow."). *But see Norton v. Parke,* 892 F.2d 476, 479 n. 7 (6th Cir.1989) ("We recognize that the citation of unpublished per curiams is disfavored. We cite *Bonnell* [*v. Com. of Kentucky,* 816 F.2d 678 (Table) 1987 WL 36998 (6th Cir. April 10, 1987) ], however, because it establishes the law governing the present action and 'there is no [Sixth Circuit] published opinion that would serve as well.' "); and *Chance v. Compton,* 873 F.Supp. 82, 86 n. 2 (W.D.Tenn. 1994) (citing *Norton* ).

In light of the two published Sixth Circuit opinions in *Calhoun* and *Fitzgerald* on the question of the dischargeability of support debts under section 523(a)(5), this court believes that it is not bound by the unpublished opinion of the Sixth Circuit in *Sholes.* More-

---

2. Rule 24. PUBLICATION OF DECISIONS

    \*    \*    \*    \*    \*    \*

(c) **Citation of Unpublished Decisions.** Citation of unpublished decisions by counsel in briefs and oral arguments in this court and in the district courts within this circuit is disfavored except for the purpose of establishing res judicata, estoppel, or law of the case.

If counsel believes, nevertheless, that an unpublished disposition has precedential value in relation to a material issue in a case and that there is no published opinion that would serve as well, such a decision may be cited if counsel serves a copy thereof on all other parties in the case and on the court. Such service may be accomplished by including a copy of the decision in an addendum to the brief.

over, this court believes that under the existing circumstances it is bound by *Fitzgerald.* Although *Fitzgerald* addressed alimony obligations, this court believes that the *Fitzgerald* opinion provides the soundest and most analogous reported case authority on alleged support obligations which are enumerated as such in a divorce decree. The court also notes that *Fitzgerald* was decided on November 10, 1993—almost 10 months after the *Sholes* decision. Additionally, neither the *Sholes* bankruptcy court opinion nor that of the district court was published and the copy of the opinion submitted by the debtor's counsel is but a one page "Order" with very little background information from which the court can determine the real usefulness of its holding as applied to this proceeding.

The parties have filed cross-motions for summary judgment pursuant to FED. R.BANKR.P. 7056, which incorporates FED. R.CIV.P. 56; and thus cases interpreting Rule 56 are applicable. Summary judgment is appropriate when the court determines that there are no genuine issues of material fact and that the moving party is entitled to judgement as a matter of law. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); and *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court finds here that there are no genuine issues of material fact and that the plaintiff is entitled to judgment under these particular facts, circumstances, and applicable bankruptcy law.

Based on the foregoing findings of fact and conclusions of law, and applicable law, the court grants the plaintiff's motion for summary judgment arising out of the complaint to determine the dischargeability of particular debts under 11 U.S.C. § 523(a)(5)(B) and FED.R.BANKR.P. 4007.

For the reasons set forth above, IT IS ORDERED that the plaintiff's motion for summary judgment is hereby granted.