In re Peter A. TADISCH and Sandra J. Tadisch, Debtors.

Peter Alan TADISCH II, Daniel James Tadisch, Jeremy David Tadisch, and Sondra LaCoy, Plaintiffs,

v.

Peter A. TADISCH and Sandra J. Tadisch, Defendants.

Bankruptcy No. 96–24937–JES.

Adversary No. 97–2221.

United States Bankruptcy Court, E.D. Wisconsin.

Jan. 28, 1998.

Michael J. Palid, Marinette, WI.

Joseph J. Klumb, Menominee, MI.

Michael G. Trewin, New London, WI.

## DECISION

JAMES E. SHAPIRO, Chief Judge.

In this adversary proceeding, the plaintiffs are seeking a determination that an obligation from Peter A. Tadisch ("debtor"), to his three minor children arising out of a marital settlement agreement and incorporated into a judgment of divorce is a nondischargeable debt. Sandra Tadisch, a co-debtor and the current spouse of debtor, was also named as a defendant in this case. At the trial, the court granted the defendants' motion to dismiss Sandra Tadisch from this case because no relief was sought against her. The court also dismissed all claims brought by plaintiff, Sondra LaCoy, against debtor because she holds no interest in the underlying obligation. What then remained in this adversary proceeding was the dispute between the three minor children and their father, the debtor.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

The debtor and his former wife, Sondra LaCoy, were parties in a divorce case filed in Marinette County, Wisconsin, as Case No. 93–FA–196. Because of a custody dispute in that case, Atty Michael J. Palid was appointed guardian ad litem for the three minor children. Shortly before the trial was to have commenced, all contested issues (including custody of the children) were settled. The divorce judgment which ensued approved a marital settlement agreement between the parties subject to an amendment made in open court regarding 140 acres of real estate. The divorce judgment recited that the 140 acres of real estate, which had been inherited by debtor, shall be deeded by him and Sondra to their three children. The land was initially to be held in trust for the benefit of the children with the debtor as the designated trustee until the oldest child attains age 18, at which time the 140 acres would be conveyed outright to all three children free and clear of all liens and encumbrances. The divorce judgment further provided that the debtor would have the use of this land as collateral on any loans, but when the property was to be conveyed outright to the children, it must be conveyed free and clear of all liens and encumbrances.

### FACTS

The debtor and Sondra have three children. They are Peter Alan II, age 14, Daniel James, age 13, and Jeremy David, age 11.

The divorce was granted to the parties on December 21, 1994 before The Honorable Tim J. Duket, Marinette County Circuit Judge. Paragraph 16 of the divorce judgment reads as follows:

> Property division that the 140 acres of land are to be deeded to the children and to be held in trust for them with the trustee, Peter Alan Tadisch, to be allowed to use the property as collateral on any loans until the oldest child, Peter, II, turns 18 at which time the property shall be exclusively transferred to the three chlidren [sic] of the marriage, free and clear of any liens or encumbrances. The respondent may not permit any future spouse or any other person to claim any interest in said property.

Peter II, who is the oldest child, shall turn 18 on March 1, 2001.

The 140 acres of land are located in Marinette County, Wisconsin. The land contains timber which can be utilized for logging operations. The debtor is a self-employed logger. The 140 acres is part of a larger parcel of land (approximately 966 acres), all of which at one time was owned by the debtor's father. The debtor and his brothers ultimately inherited this land from their father. The debtor's portion of the inherited property was the 140 acres in question.

When the divorce was granted, the 140 acres was subject to a mortgage held by Farm Credit Services of Northeast Wisconsin, with an unpaid balance then due of approximately $55,000. Presently, this unpaid balance has grown to approximately $86,000. This increase is due to continuing interest, late charges, and attorney's fees and also due to an unpaid balance on a separate operating line of credit which the debtor had with Farm Credit Services. This line of credit was also collateralized by the land.

The marital settlement agreement also provided that the debtor pay $500 each month toward the support of his children during the period of September 1 through May 31 of each year, when they are in the physical custody of Sondra. For the other three months of the year, the children are in the physical custody of the debtor and there is no support for the children by either him or Sondra. Maintenance to both parties was waived.

In February of 1995 (after the divorce was granted), Sondra quit claimed her interest in the 140 acres to the debtor and to the three children in order to fund the trust in accordance with Judge Duket's order (Exhibit 1). Although there was an exchange of several drafts of the proposed trust, it was never executed. The debtor insisted that 70 acres, not 140 acres, be placed into the trust and that the remaining 70 acres be held by him outright.

This court finds that the debtor's refusal to place the entire 140 acres in trust was contrary to the clear language of the divorce judgment.

In September of 1995, the debtor stopped making payments to Farm Credit Services on the mortgage covering the 140 acres. It is unclear why this was done. The guardian ad litem argued that it was done intentionally to force a sheriff's sale, which would then enable the debtor to repurchase the real estate and avoid the terms of the judgment of divorce. This position is supported by language in a letter dated October 26, 1995 from Gary Luethi, senior credit analyst for Farm Credit Services to the Farm Credit Services' attorney (Exhibit 8), which states, in part: "The borrower wants us to foreclose on the real estate to force its sale." The debtor vehemently denied that was his purpose. He claims he could no longer afford to make the mortgage payments. In any event, Farm Credit Services commenced its foreclosure of the 140–acre parcel. On August 18, 1997, a judgment of foreclosure was acquired by Farm Credit Services, pursuant to a 6–month equity of redemption period, which shall expire on or about February 18, 1998.

On June 18, 1996, debtor and his wife, Sandra J. Tadisch, filed a petition in bankruptcy under chapter 13. Their proposed plan was never confirmed. On February 14, 1997, they converted their chapter 13 case to a case under chapter 7.

This adversary proceeding was commenced on May 19, 1997. A trial was then held on January 16, 1998.

*LAW*

## IS THE OBLIGATION OF THE DEBTOR ARISING OUT OF THE DIVORCE JUDGMENT AND REQUIRING THE CONVEYANCE OF 140 ACRES OF LAND TO HIS THREE MINOR CHILDREN A NONDISCHARGEABLE DEBT?

The plaintiffs have asserted several exceptions to discharge in their effort to obtain a ruling of nondischargeability of this obligation. These grounds consist of: 11 U.S.C. §§ 523(a)(4) (fiduciary fraud), 523(a)(5) (support), 523(a)(6) (willful and malicious injury to property), and 523(a)(15) (discharge exception for certain property settlement debts incident to a divorce). The court shall initially focus upon § 523(a)(5).[1]

 The burden of proof to establish nondischargeability rests upon the objecting parties and must be proven by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Whether or not a particular debt is nondischargeable support presents a federal bankruptcy question, not a state question. *In re Messnick*, 104 B.R. 89, 92 (Bankr. E.D.Wis.1989). However, the bankruptcy court may be guided and informed by state law considerations. *In re Hutchins*, 113 B.R. 1, 2 (Bankr.C.D.Cal.1990); *In re Messnick*, 104 B.R. at 92. The main principle guiding bankruptcy courts in determining if a debt is nondischargeable alimony, maintenance, or support is the *intent* of the parties or the state court in creating the obligation and the *purpose* of the obligation in light of the parties' circumstances at that time. If the intent is not explicitly expressed, the court must attempt to infer this intent by an examination of the particular facts of each case.

In Wisconsin, *Vaccaro v. Vaccaro*, 67 Wis.2d 477, 483, 227 N.W.2d 62 (1975), declares that a final property division is a matter *only* between a husband and wife. (emphasis added) *See also Estate of Barnes v. Hall & Barnes*, 170 Wis.2d 1, 486 N.W.2d 575 (App.1992). In the case at bar, the 140 acres is not being divided between the parties. It is being conveyed to and for the benefit of their children. Wis. Stat. § 767.255(1) is instructive for the following language contained within it:

> The court may protect and promote the best interests of the children by setting aside a portion of the property of the parties in a separate fund or trust for the *support, maintenance, education, and general welfare* of any minor children of the parties. (emphasis added)

The key words in § 767.255(1) are "support, maintenance, education, and general welfare." These words strongly suggest that, when property is being conveyed to and for the benefit of the children of the parties, the obligation takes on the character of support.

 An outright transfer of this real estate to the Tadisch children will occur when Peter Alan II attains age 18 and when there will no longer be an obligation by the debtor to support him. However, that does not change the nature of the obligation. The debtor will still be obligated to support his other two children, who will still be minors. More importantly, a spouse can agree to maintain support even after a child attains majority. This is commonly done, for example, in providing for the educational needs of children who have already attained majority age. Under these circumstances, courts have held that this type of obligation retains its character of support and remains nondischargeable. *In re Harrell*, 754 F.2d 902, 904 (11th Cir.1985); *In re Pierce*, 95 B.R. 154, 159 (Bankr.N.D.Cal.1988). Therefore, even in the absence of any duty of support under state law, an obligation can still be support for purposes of bankruptcy law. Henry Sommer, et al., *Collier Family Law and*

1. **§ 523. Exceptions to discharge.**
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or

other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support. . . .

*Practice and Bankruptcy Guide,* § 6.03[2] (1997); *In re Sampson,* 997 F.2d 717 (10th Cir.1993); *In re Yeates,* 807 F.2d 874 (10th Cir.1986); *Boyle v. Donovan,* 724 F.2d 681 (8th Cir.1984).

■ Paragraph 16 of the judgment of divorce contains, at the beginning, the words "Property Division." Wis. Stat. § 767.255 is also labelled "Property Division." However, labels alone are not controlling. It is well established that a court is not bound by a label which is given to an obligation either in the agreement by the parties or by court order. *Sylvester v. Sylvester,* 865 F.2d 1164, 1166 (10th Cir.1989). A court can and must look behind a label to determine the true nature of the obligation.

Sondra testified that, even before the parties were divorced and while they were living together, there was discussion between them regarding the 140 acres of land. She acknowledged that it was always intended that this property remain in the Tadisch family but that it be given to their children in order to provide for their education and to give them a start in life. In *Boyle v. Donovan,* 724 F.2d 681, 683 (8th Cir.1984), the court states that an obligation to provide children with a start in life constitutes a form of support and that the competing goal of giving a debtor a fresh start must give way to this support goal.

The debtor attempted to prove that this proposed conveyance of land was a property division by pointing to the following exchange which occurred in the divorce trial between Atty John J. Hogan, Sondra's attorney, and Sondra (Exhibit 13):

Question: (By Atty Hogan)

Okay. And you're agreeable to that, and that in your mind, at least, begins to equalize the property division between the two of you. (referring to the 140 acres)

Answer: (By Sondra)

I feel it is fair that the boys get the land.

Sondra's answer to Atty Hogan's question was unresponsive. Nothing in this exchange provides any insight on the issue of whether the purported conveyance of land was intended as support or property division. The court is persuaded that the land designated by the parties to go to the children, rather than to either spouse, is a form of support. If the 140 acres was either divided in some manner between Sondra and the debtor or even given entirely to the debtor, with Sondra relinquishing any rights she may have, this would present a stronger case for concluding that it was a property division. That was not the case here. The 140 acres was intended to be given to the Tadisch children and was intertwined with a heated issue of custody. Sondra was using her possible interest in this land as a bargaining chip. She had a claim to the land (even though it was inherited by the debtor) under Wis. Stat. § 767.255(2)(b) (as creating a hardship upon her) and also upon her testimony of her contribution to payment of outstanding real estate taxes on this 140-acre parcel after the debtor had inherited it. Ultimately, she agreed to give up her rights, conditioned upon (1) the 140 acres being conveyed to their children and (2) Sondra obtaining certain custody rights which she was in jeopardy of losing. Sondra knew that the guardian ad litem was going to recommend to the court that primary custody of the children be awarded to the debtor. She fought to avoid this result. The fact that the conveyance of this land to the children was intertwined with the custody issue did not change its character from support to property division.

■ "Support" is defined broadly in order to augment the public policy concern of enforcing obligations for spousal and child support. *Shannon v. Strickland,* 207 B.R. 752, 753 (M.D.Fla.1995), aff'd, 90 F.3d 444 (11th Cir.1996); *Macy v. Macy,* 114 F.3d 1, 3 (1st Cir.1997); *In re Miller,* 55 F.3d 1487, 1489 (10th Cir.1995). These courts favor the policy of enforcing § 523(a)(5) nondischargeable support over the policy of a fresh start for a debtor. *See also Sampson v. Sampson,* 997 F.2d 717, 722 (10th Cir.1993).

■ In the final analysis, the debtor and Sondra were not attempting, by conveying the land to their boys, to adjust a property division between themselves. Rather, this conveyance was intended to provide a source of support through revenues to be generated off the land and which could, in turn, be used

for their childrens' future education and welfare.

The debtor testified that he didn't fully understand the impact of what he was doing in the divorce case and that he only had approximately 1/2 hour to make his decision. This explanation is unavailing. He is a high school graduate and was represented by an attorney in the divorce action. It is not the role of this court to undo a settlement arrived at between the parties in connection with a state court action, which was thereafter embodied in a judgment of divorce. In *In re Wickersheim,* 107 B.R. 177, 181 (Bankr. E.D.Wis.1989), this court declared that a party's second thoughts about a settlement were no basis for rescission. *Wickersheim* also stated that permitting a rescission of a settlement under these circumstances would make a mockery of settlements and defeat the goal of finality.

It is also not the role of this court to interfere with a divorce judgment. A bankruptcy court is not in the business of overturning or modifying a state court judgment. The debtor's remedy was to seek relief through the state courts. A bankruptcy court should not place itself in a position of second-guessing a decision by a domestic relations court. *In re Davis,* 172 B.R. 696, 700 (Bankr.S.D.Ga.1993); *In re Griffith,* 203 B.R. 422, 425 (Bankr.N.D.Ohio 1996). It is well established that a federal court should afford full faith and credit to a state court's proceedings and that it has no appellate or supervisory control over such court. *In re Mann,* 88 B.R. 427, 429 (Bankr.S.D.Fla. 1988); *In re Purpura,* 170 B.R. 202, 211 (Bankr.E.D.N.Y.1994).

## CONCLUSION

The debtor's obligation to his three children in connection with his commitment to convey the 140 acres of real estate is a nondischargeable debt under 11 U.S.C. § 523(a)(5) as being in the nature of support.

Having found this debt to be nondischargeable under § 523(a)(5), the alternative ground asserted by the plaintiffs under §§ 523(a)(15) based upon nondischargeable property division obligations arising out of a divorce action is eliminated. The remaining grounds asserted as a basis for nondischargeability—§§ 523(a)(4) and 523(a)(6)—are moot and need not be addressed.

The amount of this nondischargeable support obligation is uncertain. By determining that the obligation is nondischargeable under § 523(a)(5), this court's task is at an end. It is for the divorce court to establish the amount of this nondischargeable obligation.

This decision shall constitute the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.