**In re Michael Lee SEIXAS and Diana M. Seixas, Debtors.**

**Michael Lee Seixas, Appellant,**

**v.**

**Marsha Booth, Appellee.**

**BAP No. NV–98–1183–RyKBu.**

**Bankruptcy No. 97–30664.**

**Adversary No. 97–3075.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Submitted Without Oral Argument June 23, 1999.

Decided July 30, 1999.

J. William McNulty, Reno, NV, for Michael Lee Seixas.

David Rankine, Reno, NV, for Marsha Booth.

Before: RYAN, KLEIN, and BUFFORD,[1] Bankruptcy Judges.

1. Hon. Samuel L. Bufford, Bankruptcy Judge for the Central District of California, sitting by designation.

*OPINION*

RYAN, Bankruptcy Judge.

After debtor Michael Lee Seixas ("Debtor") and his current spouse Diana M. Seixas filed their chapter 7[2] bankruptcy petition, Marsha Booth, Debtor's former spouse, filed a complaint (the "Complaint") to determine that Debtor's obligation to pay one half of his children's college education expenses pursuant to a marital settlement agreement (the "Agreement") constituted nondischargeable child support under § 523(a)(5). The bankruptcy court agreed and entered judgment in favor of Booth.

We AFFIRM.

## I. FACTS

Debtor and Booth were married in November 1967 and separated in February 1982. At the time of separation, they had two minor children born in 1974 and 1978, respectively. In January 1983, the parties entered into the Agreement which set forth the following obligations: (1) child custody, support, and visitation rights; (2) Debtor's spousal support obligations; (3) division of community property and debt; (4) tax obligations; (5) obligation to pay the college education expenses of their minor children (the "College Education Provision"); (6) obligation to bear their own attorney's fees and costs; and (7) various miscellaneous obligations. The Agreement was incorporated into the Interlocutory Judgment of Dissolution of Marriage entered on January 23, 1983 in the California Superior Court for the County of San Bernardino (the "State Court").

After Debtor failed to pay his share of the children's college expenses pursuant to the Agreement, Booth filed an action in the State Court to enforce the College Education Provision and sought reimbursement of college expenses paid by Booth in excess of her fifty percent share.[3] The College Education Provision provides as follows:

> 5. ADDITIONAL BENEFITS FOR CHILDREN: Husband and Wife agree that each will bear fifty percent (50%) of any college education expenses of the minor children. Husband agrees to carry the children as beneficiaries on a minimum of $70,000.00 worth of life insurance to such time as each respective child attains a Bachelor's degree or reaches the age of 23, at which time he may withdraw them as beneficiaries. Wife agrees to carry the children as beneficiaries on a minimum of $30,000.00 worth of life insurance until such time as each respective child attains a Bachelor's degree or reaches the age of 23, at which time she may withdraw them as beneficiaries.

Marital Settlement Agreement at 6, ¶ 5.

At the conclusion of trial in September 1995, the State Court took the matter under submission. The State Court subsequently rendered a written decision in favor of Booth, and entered judgment (the "State Court Judgment") in June 1996. The State Court Judgment liquidated Debtor's obligation, requiring Debtor to pay $10,263.01 as reasonable college education expenses and $6,395 for attorney's fees and costs. Debtor did not appeal the State Court Judgment.

In addition, in construing the nature of the College Education Provision, the court found that the obligation did not constitute child support, but rather, constituted "an additional benefit, apart from child support, inuring directly to the parties to the [Agreement] and indirectly to their children as third-party beneficiaries." Statement of Decision at 2 (Feb. 8, 1996). The court found that "[t]hose provisions were not and are not subject to modification by the Court in the Family Law action." *Id.*

---

**2.** Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

**3.** The State Court complaint is not included in the excerpts of record.

In March 1997, Debtor and his current spouse filed their chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Nevada. In May 1997, Booth filed the Complaint. The Complaint sought a determination that Debtor's obligations to pay one half of his children's college education expenses (and resultant attorney's fees) pursuant to the Agreement and the State Court Judgment constituted nondischargeable child support under § 523(a)(5). Alternatively, the Complaint sought a determination that the obligations were nondischargeable under § 523(a)(15).

In July 1997, Booth filed a motion for summary judgment, and Debtor filed an opposition to the motion and a cross motion for summary judgment. The court denied both motions in August 1997, determining that there were genuine issues of material fact that had to be resolved before the court could make a legal determination of whether the debt was nondischargeable under § 523(a)(5), such as the intent of the parties at the time that they entered into the Agreement and whether the obligation to pay college education expenses was "in the nature of support."

In January 1998, trial was held on the Complaint. After admitting into evidence the Agreement, the State Court Judgment, the State Court's statement of decision, schedules I and J, and other pertinent documents, Debtor and Booth testified as to their intent in entering into the Agreement and the purpose of the College Education Provision. No other witnesses testified.

At the conclusion of trial, the bankruptcy court found that the parties intended to provide for the children's support through college and that the College Education Provision was "in the nature of support," and thus nondischargeable under § 523(a)(5). The court did not reach the issue of whether the obligation was nondischargeable under § 523(a)(15).

The bankruptcy court entered judgment in favor of Booth on March 9, 1998, and Debtor filed a timely notice of appeal on March 16, 1998.

## II. ISSUE

Whether the bankruptcy court erred in determining that the College Education Provision created an obligation in the nature of support that was nondischargeable under § 523(a)(5).

## III. STANDARD OF REVIEW

■ We review the bankruptcy court's factual determination that a debt was for alimony, maintenance, or support for clear error. *See Jodoin v. Samayoa (In re Jodoin)*, 209 B.R. 132, 135 (9th Cir. BAP 1997). "To the extent that questions of fact cannot be separated from questions of law, we review these questions as mixed questions of law and fact applying a de novo standard." *Id.* (citing *Ratanasen v. California Dep't of Health Servs.*, 11 F.3d 1467, 1469 (9th Cir.1993)).

## IV. DISCUSSION

*The Bankruptcy Court Did Not Err in Determining That the College Education Provision Created a Nondischargeable Obligation Under § 523(a)(5).*

Debtor argues that the bankruptcy court erred in determining that the College Education Provision created an obligation in the nature of support for purposes of § 523(a)(5) because: (1) the provision did not specifically designate the obligation as child support and the bankruptcy court should have accepted the State Court's finding that the obligation was not intended to be a child support obligation; (2) Congress did not intend to except from discharge "contractual agreements for adult children"; and (3) Booth failed to meet her burden of demonstrating that the parties intended the College Education

Provision to be a child support obligation. We disagree.

1. *Neither the Failure of the Parties to Designate the College Education Provision as Child Support Nor the State Court's Interpretation of the Agreement Are Dispositive in Determining Whether the Obligation Is in the Nature of Support for Purposes of § 523(a)(5).*

Debtor's assertions that the College Education Provision had to be specifically designated as support in the Agreement to be nondischargeable under § 523(a)(5) and the bankruptcy court was bound by the State Court's characterization of the College Education Provision are without merit.

■ Section 523(a)(5) excepts from discharge any child support obligation resulting from a separation or divorce agreement. *See* 11 U.S.C. § 523(a)(5).[4] Whether an obligation arising out of a divorce is nondischargeable support under § 523(a)(5) is a question of federal law, and the labels used by the state court are not binding. *See Jodoin,* 209 B.R. at 137–38; *Gionis v. Wayne (In re Gionis),* 170 B.R. 675, 681 (9th Cir. BAP 1994), *aff'd,* 92 F.3d 1192, 1996 WL 429154 (9th Cir.1996); *Binder v. Prager (In re Prager),* 181 B.R. 917, 920 (Bankr.W.D.Tenn.1995) ("Federal bankruptcy courts . . . are not bound by the labels that the parties to the divorce or state courts place on obligations.") (citations omitted). Similarly, bankruptcy courts are not required to accept the description or designation of items by the parties in a settlement or decree as conclusive when deciding if an obligation is in the

nature of support or settlement of property. *See Stout v. Prussel,* 691 F.2d 859, 861 (9th Cir.1982). Rather, they must look beyond the language of the agreement, judgment, or decree to the intent of the parties and to the substance of the obligation. *See Shaver v. Shaver,* 736 F.2d 1314, 1316 (9th Cir.1984).

■ Bankruptcy courts must ascertain the intention of the parties at the time that they entered into the stipulation agreement. *See Leppaluoto v. Combs (In re Combs),* 101 B.R. 609, 615 (9th Cir. BAP 1989). We have previously stated that substance prevails over form in the context of § 523(a)(5). *See Jodoin,* 209 B.R. at 137–38 n. 14 (citing *Dressler v. Dressler (In re Dressler),* 194 B.R. 290, 295 (Bankr. D.R.I.1996) (quoting *Warren v. Warren (In re Warren),* 160 B.R. 395, 398 (Bankr. D.Me.1993))). "The Code necessitates that the bankruptcy court 'determine the nature of the debts, regardless of the labels placed on them by the parties or the family court.'" *Id.* at 138 (quoting *Sweck v. Sweck (In re Sweck),* 174 B.R. 532, 534 (Bankr.D.R.I.1994)).

■ Here, the bankruptcy court was not required to accept the "ADDITIONAL BENEFITS FOR CHILDREN" label used by the parties for the College Education Provision or the State Court's interpretation of the College Education Provision as "an additional benefit, apart from child support." Rather, the court properly looked beyond the language of the Agreement, *see Shaver,* 736 F.2d at 1315, and the State Court's characterization of the nature of the obligation in determining whether the College Education Provision

---

4. Section 523(a)(5) provides in pertinent part:
§ 523. Exceptions to discharge.
(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
. . . .
(5) to a . . . child of the debtor, for . . . support of such . . . child, in connection with a separation agreement, divorce decree or other order of a court of record,

determination made in accordance with State . . . law by a governmental unit, or property settlement agreement, but not to the extent that—
. . . .
(B) such debt includes a liability designated as . . . support, unless such liability is actually in the nature of . . . support.
11 U.S.C. § 523(a)(5).

was in the nature of child support. *See Jodoin,* 209 B.R. at 138.

### 2. *Post–Majority Educational Support Obligations May Be Nondischargeable Under § 523(a)(5).*

██ Although the Ninth Circuit has not addressed the issue of whether post-majority support, whether in the form of educational support or child support payments, are nondischargeable support obligations for purposes of § 523(a)(5), various other appellate courts have held that such obligations may be nondischargeable under § 523(a)(5). *See Richardson v. Edwards,* 127 F.3d 97, 100–01 (D.C.Cir. 1997); *Harrell v. Sharp (In re Harrell),* 754 F.2d 902, 905 (11th Cir.1985); *Boyle v. Donovan,* 724 F.2d 681, 683 (8th Cir. 1984). Similarly, the majority view of district and bankruptcy courts is that a parent's obligation to pay a child's college expenses pursuant to a separation agreement, divorce decree, or other court order may constitute an obligation "in the nature of support" that is nondischargeable under § 523(a)(5).[5]

Here, Debtor contends, without providing any authority, that Congress did not intend that support obligations for adult children be excluded from discharge under § 523(a)(5). This same argument was rejected by the Eighth and Eleventh Circuit Courts of Appeal in *Boyle* and *Harrell.* In each case, the debtor specifically argued that his obligation to pay post-majority educational expenses for his child was dischargeable because he was not required under relevant state law to support his child past the age of majority. *See Harrell,* 754 F.2d at 904–05; *Boyle,* 724 F.2d at 683. The Eighth Circuit held that

[i]n deciding whether to characterize an agreement as an alimony, maintenance or support obligation or a property settlement, the bankruptcy court does not examine the present situation of the parties. Rather, the crucial question is what function did the parties intend the agreement to serve when they entered into it. *See In re Williams,* 703 F.2d 1055, 1057 (8th Cir.1983).

*Boyle,* 724 F.2d at 683. The court concluded that even though the debtor did not have a statutory duty to pay for his children's college education under Arkansas law, the relevant inquiry for purposes of § 523(a)(5) is whether the parents intended that the college agreement function as support. *Id.*

Similarly, the Eleventh Circuit, relying on the plain language of § 523(a)(5), the legislative history, and *Boyle* held that it was "persuaded by the language of § 523(a)(5), the legislative history of that section, and the weight of the case law that the absence of a state law duty does not determine that an obligation is dischargeable in bankruptcy." *Harrell,* 754 F.2d at 905; *see also Richardson,* 127 F.3d at 100–01 ("We therefore join *Harrell* ... and *Boyle* ... in holding that a debtor's obligation under a court order, and pursuant to a settlement agreement, to pay post-majority child support is nondischargeable under § 523(a)(5) even if the obligation exceeds the requirements of state law.").

We agree with the weight of authority that a parent's obligation to pay a child's college education expenses pursuant to a settlement agreement or court order may be nondischargeable under § 523(a)(5) even though the parent does not have any

---

**5.** *See Guerron v. Grijalva (In re Grijalva),* 72 B.R. 334, 338 (S.D.W.Va.1987); *Pierce v. Pierce (In re Pierce),* 95 B.R. 154, 159–60 (Bankr.N.D.Cal.1988); *Galpin v. Galpin (In re Galpin),* 66 B.R. 127, 131 (N.D.Ga.1985); *Beck v. Beck (In re Beck),* 1994 WL 687446, at *2–4 (Bankr.W.D.Tenn. Dec. 6, 1994); *Ozey v. Ozey (In re Ozey),* 166 B.R. 169, 170–72 (Bankr.N.D.Okl.1994); *Warren v. Warren (In re Warren),* 160 B.R. 395, 399–400 (Bankr.

D.Me.1993); *Bush v. Bush (In re Bush),* 154 B.R. 69, 71 (Bankr.S.D.Ohio 1993); *cf. Tadisch v. Tadisch (In re Tadisch),* 220 B.R. 371, 374–75 (Bankr.E.D.Wis.1998) (holding that an obligation to transfer real property to the debtor's child after he attained the age of majority pursuant to a marital settlement agreement constituted child support for purposes of § 523(a)(5) even in the absence of any support duty under state law).

legal duty to support a child once that child reaches the age of majority under applicable state law.[6] Because Congress "did not limit the word 'child' by prefacing it with the word 'minor,'" § 523(a)(5) allows for the nondischargeability of certain support obligations owed to children even after they have reached the age of majority. *Bedingfield v. Bedingfield (In re Bedingfield)*, 42 B.R. 641, 647 (S.D.Ga.1983) (citing *Harrell v. Sharp (In re Harrell)*, 13 B.R. 302 (Bankr.N.D.Ga.1981), *disagreed with on other grounds as stated in Comer v. Comer (In re Comer)*, 27 B.R. 1018, 1021 (9th Cir. BAP 1983), *aff'd* 723 F.2d 737 (9th Cir.1984)).

> [T]he phrase "child support", as used in 11 U.S.C. § 523(a)(5), should not be interpreted to except from discharge only such support as could be imposed by state law. To do so would be to read restrictive language into the statute with no basis in law or policy. A contractually assumed debt for such expenses should be excepted from discharge *if the parties intended it as support and if it can reasonably be construed as support.*

*Pierce*, 95 B.R. at 158–59 (emphasis added).

Thus, we must determine whether the bankruptcy court's finding that Debtor and Booth intended the College Education Provision to create a child support obligation was clearly erroneous.

**6.** We note that under California law, the parents have "an equal responsibility to support and educate their child in the manner suitable to the child's circumstances." CAL.FAM.CODE § 3900 (West 1999). This duty "continues as to an unmarried child who has attained the age of 18 years, is a full-time high school student, and who is not self-supporting, until the time the child completes the 12th grade or reaches the age of 19 years, whichever occurs first." CAL.FAM.CODE § 3901(a).

However, "[n]othing in this section limits a parent's ability to agree to provide additional support or the court's power to inquire whether an agreement to provide additional support has been made." CAL.FAM.CODE 901(b).

### 3. The Bankruptcy Court's Finding That the Parties Intended to Provide for Their Children's Support Through College and That the College Education Provision Created an Obligation in the Nature of Support for Purposes of § 523(a)(5) Was Not Clearly Erroneous.

The intent of the parties and the substance of the obligation are the touchstone of the § 523(a)(5) analysis in the Ninth Circuit. *See Shaver*, 736 F.2d at 1316 (citations omitted). "What constitutes support within the meaning of section 523(a)(5) implicates a number of factors that are potentially relevant on a case-by-case basis...." *Gionis*, 170 B.R. at 682. These factors have generally been applied to determine whether an obligation constitutes *spousal* support and include the recipient's need for support, the presence of minor children in the marriage, a disparity of income between the parties, an imbalance in the relative income of the parties, and the nature and duration of the obligation. *See Shaver*, 736 F.2d at 1316; *Gionis*, 170 B.R. at 682. However, these factors do not fit neatly within a determination of whether an obligation constitutes *child* support. Thus, we look "'at the surrounding circumstances and all other relevant incidents bearing on the parties' intent'" to determine whether the parties intended a particular obligation to be in the nature of child support. *Kritt v. Kritt (In re Kritt)*, 190 B.R. 382, 387 (9th Cir.

At least one court has held that such expenses, if contractually assumed, may constitute support. *See Pierce*, 95 B.R. at 159–60 (citing *Jones v. Jones*, 179 Cal.App.3d 1011, 225 Cal.Rptr. 95 (1986)).

We need not decide whether a contractual obligation to pay support to an adult child is in the nature of support under California law. Regardless of whether a child support obligation conflicts with California law, bankruptcy courts are not bound by the treatment of the obligation in California courts because federal law governs whether an obligation is "'actually in the nature of ... support' and is therefore nondischargeable." *Shaver*, 736 F.2d at 1316 (quoting *Stout*, 691 F.2d at 861).

BAP 1995) (quoting *Combs,* 101 B.R. at 616) (citing *Shaver v. Shaver (In re Shaver),* 40 B.R. 964, 968 (D.Nev.1983), *aff'd,* 736 F.2d 1314 (9th Cir.1984)). *Cf. Gionis,* 170 B.R. at 682.

■ Here, the bankruptcy court looked at the language of the College Education Provision and noted that although it was labeled as "ADDITIONAL BENEFITS FOR CHILDREN," "[i]t does not appear to ... attempt to balance out an unequal property division. It is there to provide some protection for these two boys' college education. That is the sole purpose, in this Court's opinion, of that paragraph." Hr'g, Tr. of Proceedings Before the Hon. Gregg W. Zive, United States Bankruptcy Judge at 150–51. The court also noted that although a parent cannot be compelled to support his adult children under California law absent a contractual obligation to do so, Debtor was contractually required to pay the college expenses of his adult children. *Id.* at 151 (citing *Pierce,* 95 B.R. at 158–59). Consequently, the court held:

> I find that the parties intended it [the College Education Provision] to be support and it can reasonably be construed as support. Because I can't find any other reasonable construction to place upon that agreement.
>
> The overall intention of that provision is to provide for the children's support through college.
>
> I don't think that's ambiguous whatsoever.....
>
> As to what are the specific support obligations, those have already been determined by the state court.... That's already been resolved....
>
> Therefore, it is my conclusion that the agreement is in the nature of support.
>
> It is intended as support.

It's a nondischargeable obligation under [§] 523(a)(5).

*Id.* at 153.

The bankruptcy court's finding that the parties intended to support their children through college by paying their college education expenses was not clearly erroneous. The plain language of the College Education Provision is unambiguous with respect to the parents' contractual obligation to provide for their children's college education expenses and reflects the parties' intent to equally share those expenses. Also, because no money was set aside for their children and the obligation was of limited duration (each parent was obligated to carry life insurance to support their children until the child obtained a bachelor of arts degree or reached the age of twenty three), this factor supports a finding that the provision was in the nature of support. *See Shaver,* 736 F.2d at 1316 (stating that the duration of the obligation, reflecting the recipient's need for support, is relevant in determining whether an obligation is in the nature of support). Indeed, as is evidenced from the College Education Provision, the parties were concerned enough to provide life insurance for their children's college education in the event that either spouse died. Booth testified that she and Debtor "wanted to make sure just because [they] were divorcing that the ... kids had—that there would be money there for their education." Hr'g, Tr. of Proceedings Before the Hon. Gregg W. Zive, United States Bankruptcy Judge at 36. This statement is consistent with the plain language of the College Education Provision.

Accordingly, the bankruptcy court's finding that the parties intended the College Education Provision to provide for the educational support of their children was not clearly erroneous. Consequently, the bankruptcy court did not err in determining that Debtor's obligation to pay one half of his children's education expenses was "in the nature of support," and thus, nondischargeable under § 523(a)(5).[7]

7. Booth also requests costs and fees in her appellate brief "under the rules of this court

governing fee awards and because of the prevailing party provision of the parties['] mari-

## V. CONCLUSION

In sum, the bankruptcy court did not err in determining that Debtor's obligation to pay one half of his children's college education expenses pursuant to the Agreement was nondischargeable under § 523(a)(5). The bankruptcy court was required to determine the intent of the parties without deference to the State Court's characterization of the College Education Provision. In addition, § 523(a)(5) is not limited to support obligations owed to minor children, but may extend to post-majority educational obligations if the parties so intend. Finally, the court's finding that the College Education Provision was intended to ensure that the children would receive support for their college education expenses was supported by the record.

AFFIRMED.

tal settlement agreement." Appellee's Br. 6. We decline to consider Booth's request because she failed to file a separate motion as required by Rule 8020. *See* FED.R.BANKR.P. 8020.